STATE OF NORTH CAROLINA v. DANNY LEE LOREN (ALSO KNOWN AS LUCAS LEE PARRISH; ALSO KNOWN AS LEE LOREN)

No. 21

(Filed 7 April 1981)

1. Criminal Law § 71— shorthand statement of fact

An officer's testimony that, when he stopped defendant's car and told defendant to step out of the car, defendant "was acting like he was trying to hide something" was competent as a shorthand statement of fact.

2. Criminal Law § 128.2— document in view of jury — motion for mistrial

The trial court did not err in the denial of defendant's motion for mistrial made on the ground that the prosecutor placed on a table in full view of the jury a document containing a picture of defendant and what purported to be a criminal record of defendant in Florida where the trial court found that it was virtually impossible for any member of the jury to have read the writing on the document.

3. Criminal Law § 33.3— defendant's change of appearance between arrest and trial — irrelevancy — harmless error

Testimony elicited from defendant on cross-examination that he had obtained a haircut and a shave during the interval between his arrest and trial, if irrelevant, was not prejudicial to defendant.

APPEAL by defendant from *Gaines, J.*, 30 June 1980, Criminal Session of TRANSYLVANIA Superior Court.

· Upon pleas of not guilty, defendant was tried upon bills of indictment charging him with the following offenses: (1) first degree rape; (2) first degree sexual offense, fellatio; (3) first degree sexual offense, anal intercourse; and (4) assault with a deadly weapon with intent to kill inflicting serious injury. Mrs. Mary Jane Smith was the alleged victim of the offenses.

Evidence presented by the state is summarized in pertinent part as follows:

On 5 May 1980, Mrs. Smith, who was not then living with her husband, was working at a grocery store in Brevard, North Carolina. Late in the afternoon of that day, defendant, whom Mrs. Smith had known casually for about two months, entered the store and made a small purchase. After a brief conversation with her, he left the store.

Around 7:30 p.m. Mrs. Smith was at her apartment. Responding to a knock at her door, she found defendant standing in the doorway. He told her that he thought he would stop by and have a drink with her. After being admitted to the apartment, defendant made several telephone calls, including one to the Governor's Mansion in Raleigh. He insisted that he was being harassed by the police. After defendant and Mrs. Smith took several drinks, listened to some records and danced, he left at around 9:00 p.m.

Shortly thereafter, he returned to the apartment with a bottle. After talking with her, defendant insisted on kissing Mrs. Smith. She protested his advances and asked him to leave. She then went into her kitchen to prepare defendant a drink. Defendant followed her and when she turned around, he stabbed her in the abdomen with a knife.

Thereafter, defendant put the knife to her throat, forced her to undress, and raped her. He also forced her to commit fellatio on him and to submit to anal intercourse. A short while later, Mrs. Smith escaped from defendant. She ran out the front door and across the street to the sheriff's office.

Mrs. Smith was taken to the hospital where she was examined and treated by Dr. R. L. Stricker. The doctor testified that he found a stab wound in her abdomen, two puncture wounds in her small intestine and two puncture wounds in her large intestine; that he found redness about her genitalia; that he repaired the puncture

wounds; and that the victim was emotionally upset.

Defendant elected to take the witness stand in his own behalf. He admitted having sexual relations with Mrs. Smith but insisted that she consented. He denied stabbing her. He also admitted that he had been convicted of driving an automobile under the influence of intoxicants in Transylvania County. He further admitted that he had been convicted of forgery in the state of Florida; that he had been sentenced to prison for 2-½ years; that he had served 2 years of the sentence; that he had been paroled; and that he was wanted in Florida for parole violations.

The jury returned verdicts finding defendant guilty as charged in the rape and sexual offense charges. On the assault count, he was found guilty of assault with a deadly weapon inflicting serious injury. The court entered judgments imposing concurrent life sentences in the rape and sexual offense cases, and a 10 year prison sentence in the assault case. The latter sentence is to begin at the expiration of the life sentences.

Defendant appealed and this court allowed his motion to bypass the Court of Appeals in the assault case.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Tiare B. Smiley, for the state.*

*H. Paul Averette, Jr. for defendant appellant.*

BRITT, Justice.

[1] By his first assignment of error, defendant contends the trial court committed prejudicial error in permitting a police officer to testify that defendant "was acting like he was trying to hide something". This assignment has no merit.

The challenged testimony was offered by Deputy Sheriff Hank Whitmire. He testified that he was on duty during the early morning hours of 6 May 1980; that after a warrant was issued for defendant's arrest, he passed a car which he recognized as defendant's car; that after some difficulty, he succeeded in getting defendant's car to stop; that he approached the car and told defendant to step out with his hands up; that defendant would not get out; and "that he sat there and he acted like he was doing something, like he was trying to hide something, and I told him —". At that point defendant objected and moved to strike. The court overruled the

motion.

The record discloses that immediately thereafter, the following transpired:

Q. (By Mr. Leonard): What exactly did you see him do? Demonstrate to the members of the jury what you saw him do.

A. I had my headlights on and my spotlight on him in the driver's seat and I could see him moving around like he was trying to do something, hide something or do something.

I told him three times to step out of the car. He wouldn't get out. I pulled my service revolver and advised him that I had a felony warrant, for him to step out of the car with both hands in the air.

So, he opened the door, he kicked it open with his foot, and he still continued to shuffle around. So, I told him I wasn't going to tell him again, he was going to have to step out of the car.

So he stuck his hands out and says, okay, and he stood up. I walked up to the car and made him put his hands on the car and spread his feet. At that time, Officer Carter (I believe it was, I'm not sure) arrived on the scene.

Officer Whitmire then testified that after defendant got out of the car, leaving the door open, he saw in plain view a knife pouch with a knife in it, lying under the edge of the driver's seat.

Defendant argues that the testimony to the effect that he looked like he was trying to hide something amounted to opinion evidence which was inadmissible. We reject this argument.

In 1 Stansbury's North Carolina Evidence § 125 at 389-92 (Brandis Rev. 1973) we find:

Opinion evidence is always admissible when the facts on which the opinion or conclusion is based cannot be so described that the jury will understand them sufficiently to be able to draw their own inferences. Even when it might be *possible* to describe the facts in detail, it may still be *impracticable* to do so because of the limitations of

customary speech, or the relative unimportance of the subject testified about, or the difficulty of analyzing the thought processes by which the witness reaches his conclusion, or because the inference drawn is such a natural and well understood one that it would be a waste of time for him to elaborate the facts, or perhaps for some other reason.

It is neither possible nor desirable to lay down a hard and fast rule to cover the infinite variety of situations that may arise, but the admissibility of opinion evidence under the circumstances suggested above is thoroughly established. The idea is variously expressed by saying that 'instantaneous conclusions of the mind,' or 'natural and instinctive inferences,' or the 'evidence of common observers testifying to the results of their observation' are admissible, or by characterizing the witness's statement as a 'shorthand statement of the fact' or as 'the statement of a physical fact rather than the expression of a theoretical opinion.'

While it might have been possible for the officer to have described defendant's actions in order for the jury to infer that defendant appeared to be looking for something, it was impracticable to do so. We conclude that the testimony about which defendant complains was merely a shorthand statement of fact. *See generally State v. Brower*, 289 N.C. 644, 224 S.E.2d 551 (1976); *State v. Spaulding*, 288 N.C. 397, 219 S.E.2d 178 (1975), *death sentence vacated*, 428 U.S. 904 (1976); *State v. Goines*, 273 N.C. 509, 160 S.E.2d 469 (1968).

There is an additional reason why the court did not commit error in admitting the testimony. As indicated above, after defendant's motion to strike was denied, the witness testified again, without any objection, that he could see defendant "moving around like he was trying to do something, hide something or do something." When evidence is admitted over objection, but evidence of like import is thereafter admitted without objection, the benefit of the objection is ordinarily lost. 4 Strong's N.C. Index, Criminal Law, § 162.

[2] Defendant's second assignment of error relates to his cross-examination by the prosecuting attorney. During the course of the cross-examination, defendant was asked several questions about

his criminal record in Florida. Thereafter, in the absence of the jury, defendant's attorney moved for a mistrial because of alleged improper conduct by the prosecuting attorney. Defendant's counsel stated that during the cross-examination of defendant, the prosecuting attorney placed a document 8-½ inches by 11 inches in size, on a table in full view of the jury; that the document contained a picture of and what purported to be a criminal record of defendant in Florida; and that "each and every juror upon leaving the courtroom had an opportunity to look at that photograph, and, in fact, several of them did".

The trial judge, after examining the document in question, concluded: ". . . upon examining the photograph and considering the distance of the jurors and one of the jurors closest to the photograph and the writing underneath, the Court finds it virtually impossible for the jury to have read the handwriting on the photograph." The court refused to examine the jury regarding the matter and denied defendant's motion for a mistrial. We find no error in the conduct of the trial court.

Defendant argues that the only purpose that could have been served by placing the document on the table in the view of the jurors was to convey to them the impression that defendant was a criminal and had a criminal record; and that such conduct, without any precautionary instruction by the court, was so highly improper and unfair that it deprived him of his fundamental right to due process as guaranteed by law.

A mistrial is appropriately ordered when a party shows the occurrence of serious improprieties which render a fair and impartial verdict impossible. *State v. Chapman*, 294 N.C. 407, 241 S.E.2d 667 (1978). In a criminal case, the allowance or refusal of a motion for a mistrial rests largely in the discretion of the trial court and its ruling is not reviewable absent a showing of an abuse of discretion. *E.g., State v. Yancey*, 291 N.C. 656, 231 S.E.2d 637 (1977).

The record indicates that defendant was reluctant to admit any criminal record in Florida. Thereupon, the assistant district attorney showed him the document in question and asked if that was his picture on it. Without objection, he stated that it was. As we indicated above, the trial court found that it was virtually impossible for any member of the jury to have read the writing on the document. We are unable to perceive any prejudice to defendant

and hold that the court did not abuse its discretion in denying defendant's motion for a mistrial.

[3]　On recross-examination defendant was asked if his appearance had changed any between the time of his arrest and the time of his trial. Over objection, he testified that he had obtained a haircut and a shave during that interval. This is the basis of defendant's final assignment of error.

Defendant argues that since there was no question of identity raised in the trial, the testimony was irrelevant; and that the only possible inference that the jury could draw from the evidence was that defendant had changed his appearance in order to create a more favorable impression with the jury.

Assuming, *arguendo*, that the evidence was irrelevant, we can perceive no prejudice to defendant. Common sense would suggest that any party to a lawsuit, particularly a defendant in a criminal action, should "put his best foot forward" and attempt to make the best impression possible on the court and jury that hear his case. In order to obtain a new trial it is incumbent on a defendant to not only show error but also to show that the error was so prejudicial that without the error it is likely that a different result would have been reached. G.S. § 15A-1443(a) (1978); *State v. Sparks*, 297 N.C. 314, 255 S.E.2d 373 (1979). The assignment of error is overruled.

We conclude that defendant received a fair trial free from prejudicial error.

No error.