STATE OF NORTH CAROLINA v. GRAYLING McLAUGHLIN

No. 40A86

(Filed 3 September 1987)

1. **Constitutional Law § 32; Criminal § 101.4— sending message to jury via bailiff —no constitutional violation**

   The trial court's sending of a message to the jury via the bailiff did not violate either the unanimity provision or the open court provision of Art. I, § 24 of the N.C. Constitution.

2. **Criminal Law §§ 101.4, 122.1— denial of jury's request via bailiff—violation of statute—failure to show prejudice**

   The trial judge erred when he denied the jury's request to review certain testimony by sending a message to the jury through the bailiff rather than addressing the jury as a whole in open court as required by N.C.G.S. § 15A-1233 (a). However, defendant failed to meet his burden of showing prejudice under N.C.G.S. § 15A-1443(a) and is not entitled to a new trial.

   Justice MARTIN concurring in the result.

APPEAL by defendant from judgments of *Preston, J.*, entered at the 19 November 1985 Criminal Session of Orange County Superior Court upon defendant's conviction of first degree murder and assault on a law enforcement officer with a deadly weapon. Heard in the Supreme Court on 15 April 1987.

*Lacy H. Thornburg, Attorney General, by Jane P. Gray, Special Deputy Attorney General, for the state.*

*James R. Glover for defendant-appellant.*

EXUM, Chief Justice.

The sole question presented by this appeal is whether the trial judge committed reversible error when he responded to the jury's request to review certain testimony by sending a message to the jury through the bailiff rather than by addressing the jury as a whole in open court. We hold that the trial court's actions, though erroneous, did not prejudice defendant. We therefore find no reversible error in defendant's convictions and the judgments entered against him.

I.

The state's evidence tended to show that defendant lived in Caswell County with Angela Stone and their two-year-old daughter, Patrice Stone. On the afternoon of 18 June 1985, defendant, Angela, Patrice, and Grayling, Jr., defendant's son by another woman, went to the home of Angela's mother, Mary Stone, in Graham, North Carolina. Earlier in the day Angela had informed defendant that she and Patrice were going to move in with her mother because she was tired of defendant's constant arguing. While at Mary Stone's house, defendant and Angela argued about Angela's refusal to go to work. Defendant attempted to stick Angela with a sewing needle and later threw a knife at her, cutting her upper left thigh. Defendant left the house with Patrice and Grayling, Jr. at approximately 4 p.m. A few minutes later he called Angela and told her he was going to kill Patrice and then kill Angela. Defendant called back every five or ten minutes and repeated this message.

Officer Doug Nelson of the Graham Police Department testified that he went to a residence on Ray Street and spoke with Angela Stone just before 5 p.m. She told him about the assault on

her by defendant. Nelson later spoke with Angela at police headquarters around 7:30 p.m. She told him she had taken out a warrant for assault with a deadly weapon and informed him of defendant's threats to kill her and Patrice. Nelson advised Angela to talk with the magistrate about charging defendant with communicating threats. Angela left. She returned to the police station about thirty minutes later and told Officer Nelson that defendant had called to say he was bringing Patrice home. Nelson drove to Mary Stone's house on Ray Street, where he was told by Mrs. Stone's sister that defendant had called and threatened to kill Patrice and Angela if he saw any police officers or vehicles. Other officers were alerted and they parked their patrol cars out of sight. At about 9 p.m. defendant turned his Toyota into Ray Street, made a U-turn, and began traveling away on Gilbert Street.

Officer Nelson, who had been parked on Gilbert Street, pursued defendant to a Texaco station, where defendant stopped next to a pay phone. Nelson pulled his vehicle to a stop directly in front of defendant's car, and Captain Perdue pulled in directly behind. As these officers began to approach defendant's vehicle, Sgt. Gordon Madden arrived and stopped his patrol car parallel to and just to the right of the Toyota. Defendant put his car in reverse and slammed into Captain Perdue's vehicle. Defendant then pointed a rifle at the police officers, who retreated to their vehicles and drew their weapons.

Sgt. Madden called to defendant, who was screaming at the officers, in an attempt to calm him down. Defendant fired his rifle at Sgt. Madden, hitting him in the right hand. None of the officers was able to return fire for fear of hitting Patrice. Defendant maneuvered his car out of the Texaco station and drove away.

Officers from the Graham Police Department and the North Carolina Highway Patrol chased defendant east toward Chapel Hill. On several occasions Trooper Tim Collins of the Highway Patrol attempted to pass defendant's vehicle in an effort to slow him down. Defendant twice pointed his rifle out the car window at Collins, who was forced to take evasive action. Finally, Trooper Collins managed to pass defendant on the right, pull out in front, and slow the Toyota to a stop. Defendant, finding himself sur-

rounded, then backed his car into a Graham police vehicle driven by Officer James Cooley.

Officer Cooley could see the inside of defendant's vehicle very clearly because of the headlights shining into it. Cooley and his partner, auxiliary officer Steve Foust, got out of their car and yelled to defendant to exit his vehicle with his hands up. Defendant looked over his right shoulder and smiled at Cooley. He then raised what appeared to be a rifle and Cooley heard several popping noises. Moments later defendant got out of his car with his hands raised, saying "shoot me, kill me." Several officers immediately took him into custody.

Officer Foust, who was an emergency medical technician, removed Patrice Stone from defendant's vehicle and discovered six bullet wounds in her chest. The child was still conscious at this point; she turned to look at the officers assisting her but said nothing. Shortly thereafter, as officers were driving her to meet an ambulance, Patrice stopped breathing. Efforts to revive her were unsuccessful. Dr. John Butts, the state's assistant chief medical examiner, testified that Patrice died of bullet wounds that passed through both lungs, her right ventricle, her liver, her aorta, her stomach and her spinal column.

Defendant put on no evidence during the guilt phase. The jury found defendant guilty of first degree murder and assault on a law enforcement officer with a firearm. Following a sentencing hearing the jury recommended life imprisonment on the first degree murder conviction, and judgment was entered accordingly. Judgment on the assault conviction was consolidated with the murder conviction for sentencing purposes.

## II.

Closing arguments in the guilt phase of this trial were made on Monday morning, 18 November 1985. The trial court delivered its charge after lunch, and the jury retired to deliberate at 2:20 p.m. At 4:33 p.m., the jury sent the trial judge a note requesting that the testimony of Angela Stone and Sgt. Madden be reread. Both the state and defendant agreed that the testimony should not be reread. The trial judge sent a message to the jury, through the bailiff, denying the jury's request. The record does not indicate whether the judge's message was in written form or trans-

mitted orally by the bailiff. At 4:45 p.m. the jury returned to the courtroom and asked to be reinstructed on the definitions of malice, premeditation and deliberation. These definitions were reread, the jury again retired, and at 5:16 p.m. the verdicts against defendant were returned.

N.C.G.S. § 15A-1233(a) (1983) states that "jurors must be conducted to the courtroom" if, after retiring for deliberation, they request a review of testimony or other evidence.[1] Article I, section 24 of the North Carolina Constitution states that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." Defendant, relying on this Court's decision in *State v. Ashe*, 314 N.C. 28, 331 S.E. 2d 652 (1985), contends that he is entitled to a new trial because the trial judge's failure to address the entire jury in open court in responding to the jury's request violated the provisions of both N.C.G.S. § 15A-1233(a) and Article I, section 24 of the state constitution. We agree that the trial judge erred as defendant contends by not adhering to the requirements of the statute, but we find no error of constitutional dimension and hold that a new trial is unnecessary because there is no showing that the error prejudiced defendant. N.C.G.S. § 15A-1443(a) (1983); *State v. Freeland*, 316 N.C. 13, 340 S.E. 2d 35 (1986).

In *Ashe*, defendant was accused of being one of several persons who had murdered a Cherokee County man. The principal witness against defendant was an admitted participant in the crime who testified pursuant to a plea bargain with the state. Defendant's defense was alibi, and he produced two witnesses who testified that he was with them and could not have been present at the time and place of the murder. After the jury retired to deliberate, the foreman returned alone to the courtroom, where the following exchange took place:

THE COURT: Mr. Foreman, the bailiff indicates that you request access to the transcript?

FOREMAN: We want to review portions of the testimony.

---

1. The statute also requires the trial judge to exercise his or her discretion in determining how to treat the jury's request. N.C.G.S. § 15A-1233(a). Defendant does not contend that the trial judge failed to exercise discretion in denying the jury's request to have the testimony of Ms. Stone and Sgt. Madden reread. Both defendant and the state agreed that the jury's request should be denied.

THE COURT: I'll have to give you this instruction. There is no transcript at this point. You and the other jurors will have to take your recollection of the evidence as you recall it and as you can agree on that recollection in your deliberations.

*State v. Ashe,* 314 N.C. at 33, 331 S.E. 2d at 655-56. The foreman then returned to the jury room and defendant was convicted of first degree murder. We held in *Ashe* that the trial court's addressing only the foreman in explanation of its denial of the jury's request violated N.C.G.S. § 15A-1233(a) and Article I, section 24 of the state constitution. We explained this decision as follows:

Our jury system is designed to insure that a jury's decision is the result of evidence and argument offered by the contesting parties under the control and guidance of an impartial judge and in accord with the judge's instructions on the law. All these elements of the trial should be viewed and heard simultaneously by all twelve jurors. To allow a jury foreman, another individual juror, or anyone else to communicate privately with the trial court regarding matters material to the case and then to relay the court's response to the full jury is inconsistent with this policy. The danger presented is that the person . . . may through misunderstanding, inadvertent editorialization, or an intentional misrepresentation, inaccurately relay the jury's request or the court's response, or both, to the defendant's detriment.

314 N.C. at 36, 331 S.E. 2d at 657. We said, further:

Both Art. I, § 24 of the North Carolina Constitution and N.C.G.S. § 15A-1233(a) require the trial court to summon all jurors into the courtroom before hearing and addressing a jury request to review testimony and to exercise its discretion in denying or granting the request.

314 N.C. at 40, 331 S.E. 2d at 659.

Our reference to the state constitution in *Ashe* must be understood in light of the facts with which we were then faced. The reference was intended to convey no more than the seemingly obvious proposition that for a trial judge to give explanatory instructions to fewer than all jurors violated only the unanimity requirement imposed on jury verdicts by Article I, section 24.

The Court gave no consideration to the "open court" provision of this section because the actions of the trial court in *Ashe* occurred in open court. This constitutional provision also has nothing to do with the requirement that the trial court exercise its discretion in determining a jury's request for a review of testimony. Only the statute speaks to this requirement. Thus the sense of the sentence is that when both the constitutional section referred to and the statute are considered together, the dual requirements of addressing the entire jury and exercising discretion in determining the request arise.

[1] In the case at bar no instructions were given by the trial court to fewer than all jurors. Whatever instructions the bailiff conveyed were conveyed to the entire jury assembled. There was, therefore, no violation of the unanimity provision of Article I, section 24.

Neither do we find a violation of the "open court" provision. This provision clearly has reference only to the manner in which the verdict itself is received. The trial court's sending a message to the jury via the bailiff did not run afoul of this aspect of Article I, section 24.

[2] The trial court did err by failing to comply with N.C.G.S. § 15A-1233(a) when it did not conduct the jury into the courtroom to hear and determine its request to review some of the testimony. Defendant's failure to object at trial to this procedure, moreover, does not preclude him from raising this issue on appeal. *State v. Ashe,* 314 N.C. at 39-40, 331 S.E. 2d at 659.

Defendant is not, however, entitled to a new trial. A new trial may be granted only if the trial court's error was such that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached." N.C.G.S. § 15A-1443(a); *see State v. Loren,* 302 N.C. 607, 276 S.E. 2d 365 (1981). The burden of showing such prejudice is on the defendant. *Id.*

Defendant has not met this burden. There is, of course, some chance that the note from the jury to the trial judge inaccurately conveyed the jury's request. The possibility of this kind of mistake was minimal, however, given that the jury's request was in writing. Indeed, defendant acknowledges in his brief that

> the real danger in private communication outside the court-
> room is in the message received by the jury from the trial
> judge in response to the request. . . . By interposing a third
> party [i.e., the bailiff] between the trial judge and the jurors,
> the risk that the response might carry unwanted meaning is
> increased.

Defendant suggests, for example, that the jury in this case might have been given the impression that the testimony of Ms. Stone and Sgt. Madden was "unimportant or not worthy of further consideration." *State v. Ashe*, 314 N.C. at 39, 331 S.E. 2d at 659.

Assuming for the sake of argument that this was the impression conveyed to the jury, defendant still was not prejudiced. The testimony of both Ms. Stone and Sgt. Madden was overwhelmingly favorable to the state, not defendant, and there was little or no challenge to its credibility. In *Ashe* we concluded the testimony sought to be reviewed by the jury must have been related to defendant's alibi defense, much of which was, on its face, favorable to defendant and some of which was, while on its face unfavorable to defendant, subject to doubts regarding its credibility.

Defendant here, unlike the defendant in *Ashe*, proffered no defense in the guilt phase of his trial. Indeed he has not denied that he shot Patrice Stone and Sgt. Madden. The evidence that he did is overwhelming and uncontradicted. The issue at trial, he contends, was his state of mind when these acts were committed. Defendant claims that part of Sgt. Madden's testimony—that defendant was shouting incoherently and making sudden, jerky movements at the Texaco station—could have led the jury to believe that defendant shot Sgt. Madden unintentionally, or without the specific intent to harm him. Similarly, defendant points to Angela Stone's statement that he was a good father who had a caring and loving relationship with Patrice. He argues that this testimony might have led the jury to find that he acted without malice when he shot his daughter. Defendant concludes that he would be prejudiced by any suggestion that the testimony of Sgt. Madden and Ms. Stone was unimportant or not worthy of consideration.

We disagree. Sgt. Madden testified that as he approached defendant's Toyota from the passenger side, defendant pointed a rifle at him, pinning Patrice Stone to the back of the front seat in

the process. Madden attempted to calm defendant down. "He began lowering the rifle barrel," Madden testified, "and as it went down behind the door frame, he hollered something, jerked it up and fired." There is no suggestion in this testimony that defendant had *no intent to shoot and harm* Sgt. Madden. Rather it is entirely supportive of defendant's conviction of assault on a law enforcement officer with a deadly weapon. Any suggestion that Sgt. Madden's testimony was unimportant or not worthy of consideration would tend to *benefit* defendant, not prejudice him.

Angela Stone testified on cross-examination that defendant was a good father to Patrice. She and other witnesses also testified that on the day of the alleged murder defendant argued with Angela, assaulted her with a knife, and repeatedly threatened to kill both her and Patrice. Additional testimony indicated that defendant used Patrice as a shield when confronting police at the Texaco station in Graham[2], and turned to smile at officers before shooting his daughter six times in the chest. In light of this testimony concerning defendant's actions on the day he killed Patrice, much of which was provided by Angela Stone, her testimony that defendant might have previously been a good father to his victim hardly amounts to evidence showing a lack of malice at the time of the killing. If the trial judge's error somehow had the effect of denigrating Ms. Stone's testimony, it could only have benefited defendant and could not have harmed him.

The possibility of prejudice to defendant in this case is far less than it was to the defendant in *Ashe*, the decision upon which defendant relies. First of all, the evidence in *Ashe* was considerably more equivocal than the evidence in this case. In *Ashe*, the principal witness against defendant was an admitted murderer whose testimony was refuted by two alibi witnesses. Here the state presented strong evidence of defendant's guilt, defendant presented no evidence at all during the guilt phase of his trial, and defendant's cross-examination of the state's witnesses did little, if anything, to impeach their credibility.

---

2. Sgt. Madden, recounting what happened after he had been shot by defendant, testified as follows: "I tried to position myself where I could take a shot at him, [but] was unable to do so in fear of hitting Patrice. As I aimed at him, he looked at me and leaned back behind Patrice where I could not fire at him."

In *Ashe*, moreover, the trial judge communicated with the jury through the jury foreman, from whom he received an oral request and to whom he gave oral, explanatory instructions. In this case, the request to have the testimony of Sgt. Madden and Ms. Stone reread came in a written note, both parties agreed that the testimony should not be reread, and the judge conveyed his denial of the jury's request through the bailiff without explanation. While this sequence of events does not completely eliminate the concerns that led this Court to its decision in *Ashe*, we are considerably more confident than we were in *Ashe* that they had no effect on the outcome of this trial.

In summary, we hold that the trial court erred when it failed to hear and respond to the jury's request for a review of the testimony of Sgt. Madden and Ms. Stone in open court with the jury fully assembled as required by N.C.G.S. § 15A-1233(a). Defendant has not, however, met his burden of showing prejudice under N.C.G.S. § 15A-1443(a) and is not entitled to a new trial.

No error.

Justice MARTIN concurring in the result.

Believing as I do that the principles of my dissenting opinion in *State v. Ashe*, 314 N.C. 28, 331 S.E. 2d 652 (1985), apply equally to this case, I concur in the result.