**STATE v. THOMAS**

[132 N.C. App. 515 (1999)]

Reversed and remanded.

Judges JOHN and HUNTER concur.

━━━━━━━━

STATE OF NORTH CAROLINA v. TERRY LEE THOMAS

No. COA98-470

(Filed 2 March 1999)

## 1. Jurisdiction— criminal case on civil calendar—mandate of Chief Justice

The trial court had proper jurisdiction over a prosecution for discharging a firearm into occupied property where the matter was called for trial before a judge presiding over a calendar designated as "civil" because an order from the Chief Justice specifically authorized the trial court to hear during a civil calendar week both civil and criminal cases.

## 2. Trials— exhibits—viewed in jury room—consent not obtained

There was no prejudicial error in a prosecution for discharging a firearm into occupied property where the trial court allowed photographs of a vehicle to be sent to the jury room without conducting the jury to the courtroom or obtaining the consent of the parties, but defendant did not argue and the court could not discern prejudice.

Appeal by defendant from judgment filed 23 December 1997 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 26 January 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Wallace R. Young, Jr., for the State.*

*Wyatt, Early, Harris & Wheeler, L.L.P., by John D. Bryson, for defendant-appellant.*

GREENE, Judge.

Terry Lee Thomas (Defendant) appeals from his jury conviction of discharging a firearm into occupied property.

Defendant was charged with the offense of discharging a firearm into occupied property on 15 July 1997, arrested on 28 July 1997, and indicted on 10 November 1997. The matter was called for trial on 11 December 1997 in the Guilford County Superior Court with the Honorable L. Todd Burke (Judge Burke) presiding over a week of court designated as "civil" on the calendar of courts issued by the Administrative Office of the Courts.

The State's evidence at trial tended to show the following facts. On 15 July 1997, Lesa Thomas (Ms. Thomas), Defendant's estranged wife, was driving her vehicle in Archdale, North Carolina, and saw Defendant pass her heading in the opposite direction. Defendant then turned his vehicle around and proceeded to follow Ms. Thomas for several miles into High Point, North Carolina. Ms. Thomas drove to an entrance ramp to Interstate Business 85, when she observed Defendant reach behind his seat, and pull his vehicle along side of her vehicle. She then heard a "very loud bang" and heard something hit the car. She looked up at the passenger side window of Defendant's van, and saw the end of a black powder muzzle loader shotgun with which Defendant had previously threatened her. She stopped her vehicle and attempted to reverse the car back up the entrance ramp. Defendant drove to the next exit, turned around, and came back down the opposite side of the highway. Ms. Thomas then drove to the Asheboro Police Department because she knew the police had a restraining order which had not yet been served on Defendant. After going to the Asheboro Police Department, Ms. Thomas was advised to go to the Magistrate's office in Guilford County, where she filed a report with Officer Eddie Caldwell (Officer Caldwell) of the High Point Police Department, and showed Officer Caldwell the dent in her door allegedly caused by Defendant's shooting. Officer Caldwell confirmed Ms. Thomas' story in his testimony at trial. The State also offered into evidence photographs of Ms. Thomas' door, showing the dent allegedly caused by Defendant.

Defendant presented the testimony of his cousin James Thomas, who demonstrated to the jury that due to the weight of the shotgun, it was not possible for him to hold it with one arm at the angle Defendant would have had to hold it, and pull the trigger. James Thomas also testified that he had experience shooting both Defendant's shotgun and his own powder gun. In his opinion, the amount of smoke discharged from the shotgun when fired would have filled the car with smoke, and the sound from the shotgun would have "burst your eardrums and possibly crack[ed] the windows in the

STATE v. THOMAS

[132 N.C. App. 515 (1999)]

van." Additionally, James Thomas testified that the shotgun had been in his own possession since January of 1997, and his wife, Brenda Thomas, corroborated this testimony. Finally, James Thomas testified that if the shotgun actually had been shot, it would have caused a round bullet hole rather than the dent the State's photographs and Ms. Thomas' testimony suggested.

Defendant also presented the testimony of his brother and employee Shannon Dilldine (Dilldine), who testified that as a part of his employment, his duties were to load and unload Defendant's van regularly. Dilldine also testified that he unloaded the van on 15 July 1997, and there was not a weapon in the vehicle.

The jury retired to deliberate, and during its deliberations sent a note to Judge Burke requesting to review again the photographs of the dent in Ms. Thomas' car door. Judge Burke sent the photographs to the jury room without either: (1) summoning the entire jury back to the courtroom before allowing the photographs to be taken to the jury room; or (2) obtaining the express consent of both parties. The jury returned a guilty verdict and Defendant was sentenced to a minimum of twenty-three and maximum of thirty-seven months in prison.

_____

The dispositive issues are whether: (I) the trial court, when assigned to hold "civil" court pursuant to the calendar of courts, has jurisdiction to conduct a criminal trial; and (II) the trial court committed reversible error by allowing the jury to review the photographs of Ms. Thomas' car in the jury room without first summoning the jury back to the courtroom or obtaining the consent of the parties.

I

[1] Defendant contends the trial court did not have jurisdiction to hear his criminal case because the calendar of courts designated Judge Burke's commission for the trial of civil cases only. We disagree.

Although there is a specific statute providing, "no criminal process shall be made returnable to any civil session," N.C.G.S. § 7A-49.2(b) (1995), there also was an Order from the Chief Justice of the North Carolina Supreme Court, Burley B. Mitchell, of which we

take judicial notice,[1] mandating that for the period of 1 July 1997 through the week beginning 29 December 1997: "Each session [of the Superior Court of North Carolina], notwithstanding the designations appearing on *THE CALENDAR OF COURTS*, shall be a jury session for the trial of criminal and civil cases." That Order further provided: "The designations appearing on *THE CALENDAR OF COURTS* are for administrative purposes only and establish those matters which are to be given priority during the session."

The Order from the Chief Justice thus specifically authorized the trial court to hear, during a civil calendar week, both civil and criminal cases, with the civil cases having priority. The trial court therefore had proper jurisdiction to hear Defendant's criminal case.

II

**[2]** Defendant also contends the trial court committed reversible error by allowing the jury to view photographs in the jury room without first summoning the jury to the courtroom and obtaining the consent of all parties.

"If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom," N.C.G.S. § 15A-1233(a) (1997), and "with consent of all parties," a trial judge may allow the jury to view admitted exhibits in the jury room, N.C.G.S. § 15A-1233(b).

In this case, it is undisputed that Judge Burke neither conducted the jury to the courtroom, nor obtained the consent of all parties before allowing the photographs of Ms. Thomas' vehicle to be sent to the jury room. Accordingly, because these actions are in direct conflict with the statute, they constitute error. *See State v. McLaughlin*, 320 N.C. 564, 568, 359 S.E.2d 768, 771 (1987) ("not adhering to the requirements of the statute" constitutes error on part of the trial court). This error, however, does not require a new trial unless Defendant demonstrates that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached." N.C.G.S. § 15A-1443(a) (1997); *see McLaughlin*, 320 N.C. at 568-70, 359 S.E.2d at 771-72 (requiring defendant to show that error of trial court prejudiced him); *Robinson*

---

1. "[J]udicial notice is appropriate to determine the existence and jurisdiction of the various courts of the State." *Hinkle v. Hartsell*, 131 N.C. App. 833, ——, —— S.E.2d ——, —— (1998); 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 26, at 102 (5th ed. 1998).

*v. Seaboard System Railroad*, 87 N.C. App. 512, 528, 361 S.E.2d 909, 919 (1987) (rejecting the notion that allowing the jury to view exhibits without the consent of the parties was reversible error *per se*, and requiring "the party asserting the error [to] demonstrate that he has been prejudiced thereby"), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988); *Gardner v. Harriss*, 122 N.C. App. 697, 700, 471 S.E.2d 447, 450 (1996) (determining error by trial court in permitting the jury to view exhibits without consent of the parties, but defendant "is not entitled to a new trial absent a showing that the error was prejudicial"). In this case, Defendant does not argue how the errors were prejudicial and we discern no prejudice from this record.

No error.

Judges JOHN and HUNTER concur.