ZACHARY, Judge.
 

 *111
 
 Defendant appeals from the judgment entered upon his conviction of taking indecent liberties with the minor victim, V.R.
 
 [1]
 
 On appeal,
 
 *112
 
 defendant argues that the trial court erred by allowing witnesses to vouch for V.R.'s credibility and by failing to receive and address jury questions in the courtroom before the entire jury panel. We find no error.
 

 Background
 

 On 8 September 2014, the Guilford County Grand Jury indicted defendant for one count of taking indecent liberties with a minor. This matter came on for trial at the 13 July 2017 criminal session of Guilford County Superior Court, the Honorable John O. Craig, III presiding. At trial, the State presented evidence tending to establish the following facts:
 

 On 21 March 2014, V.R., her mother Ms. Isaacs, and V.R.'s younger sibling drove from their home in Beaufort, North Carolina to Greensboro, North Carolina to the home of defendant and V.R.'s maternal grandmother, Mrs. R. They arrived at the home of Mrs. R. and defendant around 3:00 a.m. Upon their arrival, Mrs. R. was still awake and defendant was in their bedroom. V.R. asked Mrs. R. if she could sleep with her, and Mrs. R. agreed. When V.R. went to the bedroom to greet defendant, he asked her for a hug. V.R., who was fully dressed, climbed in the bed and hugged defendant. During the hug, V.R. testified that defendant started "patting [her] bottom, calling [her] his little princess," and then defendant touched the "inside of [her] privates" with his fingers. As defendant was touching V.R.'s privates, he asked her if she "liked it" and she responded, "no, I don't" and "jumped out of bed."
 

 V.R. went to the kitchen and told her grandmother what had happened. Mrs. R. confronted defendant immediately and he denied that he had touched V.R. in an inappropriate manner. Defendant then went to bed, and Mrs. R. slept between V.R. and defendant.
 

 The next morning, Mrs. R. informed Ms. Isaacs that "V.R.... told [her] that [defendant] rubbed her bottom." Ms. Isaacs testified that she did not think Mrs. R. was telling her the entire story, so she asked V.R. about it when V.R. woke up. V.R. told her, "defendant touched me on my bottom and on my front ... he went under my underwear. He touched me on my bottom and then went around to the front and touched me there." Ms. Isaacs took V.R. to the magistrate's office, and V.R. was then transported by ambulance to the hospital. At the hospital, V.R. was interviewed separately by Greensboro Police Officer NB Fisher and Greensboro Police Detective Fred Carter. Detective Carter testified that V.R. told him that defendant put "his hand under her panties and touch[ed] her buttock and her vagina, which she described as her privates, front and back."
 

 *113
 
 Later that day, V.R. was examined and interviewed by Lechia Davis, a certified Sexual Assault Nurse Examiner (SANE). SANEs are registered nurses who specialize in forensic collection of evidence and the
 
 *483
 
 medical care of victims of sexual assault. Nurse Davis used a magnifying device called a colposcope to conduct an examination of V.R.'s external genitalia, and she noted erythema, or redness, in the inner aspect of V.R.'s labia. Nurse Davis testified as an expert witness that erythema could have been caused by touching, improper hygiene, infection, or "a multitude of things." She also opined, over defendant's objection, that erythema was consistent with touching, but that it could also be consistent with "other things, as well."
 

 During jury deliberations, the jury submitted requests to the presiding judge. The bailiff brought notes from the jury into the courtroom to Judge Craig. The first note requested the police reports, and Judge Craig wrote, signed, and had the bailiff deliver a note to the jury which stated: "The police reports were not introduced into evidence[,] so we are unable to give them to you. Only marked and admitted exhibits are available for your review." Another note requested a transcript of the witnesses' testimonies. Judge Craig again wrote, signed, and had the bailiff deliver a note to the jury which stated: "Trial transcripts are not [produced] contemporaneous[ly] with the testimony and the Court reporter would have to work many hours to get them into readable form. Therefore, I regrettably deny your request, in my discretion, because it would cause a significant delay in your deliberations."
 

 Discussion
 

 On appeal, defendant contends that the trial court erred by allowing witnesses to vouch for V.R.'s credibility and by failing to receive and address jury questions in the courtroom before the jurors as a whole.
 

 I. Witness Testimony
 

 In the present case, defendant contends that the trial court erred in allowing three witnesses to improperly vouch for V.R.'s credibility: Ms. Isaacs, Detective Carter, and Nurse Davis. Defendant concedes that he did not object at trial to the testimony of Detective Carter or Ms. Isaacs. Accordingly, we review the admission of both Detective Carter's and Ms. Isaacs's testimony for plain error.
 
 See, e.g.
 
 , N.C.R. App. P. 10(a)(4) (2017). In order to establish plain error, "a defendant must demonstrate that a fundamental error occurred at trial."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citing
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) ). "To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the
 
 *114
 
 entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' "
 
 Id
 
 . (quoting
 
 Odom
 
 ,
 
 307 N.C. at 660
 
 ,
 
 300 S.E.2d at
 
 378 ) (other citation omitted).
 

 Defendant objected at trial to the testimony of Nurse Davis. Accordingly, we review the trial court's admission of Nurse Davis's testimony for abuse of discretion.
 
 See
 

 State v. Livengood
 
 ,
 
 206 N.C. App. 746
 
 , 747,
 
 698 S.E.2d 496
 
 , 498 (2010).
 

 A. Ms. Isaacs's Testimony
 

 Defendant first contends that the trial court erred by allowing Ms. Isaacs to vouch for V.R.'s credibility, and that this constituted plain error. We disagree.
 

 Under N.C. Gen. Stat. § 8C-1, Rule 701, lay witness "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2017). In the portion of Ms. Isaacs's testimony to which defendant assigns error, Ms. Isaacs states as follows:
 

 I knew that my daughter would tell me the truth because that's what I had instilled in her. So I was debating on whether to wake her up. I didn't want to traumatize her. I didn't want to scare her. I knew that when she would come to me at that moment when I asked her that she would tell me the truth.
 

 In sum, Ms. Isaacs testified that she believed that her daughter was truthful in her accusations.
 

 This Court confronted a similar issue in
 
 *484
 

 State v. Dew
 
 ,
 
 225 N.C. App. 750
 
 ,
 
 738 S.E.2d 215
 
 (2013),
 
 disc. review denied
 
 ,
 
 366 N.C. 595
 
 ,
 
 743 S.E.2d 187
 
 (2013). In
 
 Dew
 
 , the defendant appealed his conviction for taking indecent liberties with a minor and argued that the trial court had committed plain error in admitting the following testimony from the two victims' mother:
 

 They said just-they-I don't remember even which one of it was, but they said they had been messed with. And I said, what? They said, "We've been molested." And I said, "By who?" And they said, "Uncle John." And I just jumped up and down and screamed because I couldn't, you know, it was hard to believe. And I said, "No he didn't, no he
 
 *115
 
 didn't." And I mean, not telling them that he really didn't, but just-I couldn't believe that he'd done it. But I believe my girls and I looked at them and I-and I just remember hugging them and I said, oh God. You know what this means? And I said, you know, I'll do whatever I have to do to prosecute and they understood that.
 

 Id
 
 . at 755,
 
 738 S.E.2d at 219
 
 . We concluded as follows:
 

 When taken in context, Ms. M.'s statement that she believed her daughters was made in the course of a discussion of her emotional state at the time that Violet and Becky informed her that Defendant had sexually abused them. Assuming, without in any way deciding, that the admission of this portion of Ms. M.'s testimony was improper, Defendant has failed to show that, absent the error, the jury would have probably reached a different result. Simply put, in view of the relatively incidental nature of the challenged statement and the fact that most jurors are likely to assume that a mother will believe accusations of sexual abuse made by her own children, we cannot conclude that the challenged portion of Ms. M.'s testimony had any significant impact on the jury's decision to convict Defendant.
 

 Id
 
 . at 755-56,
 
 738 S.E.2d at
 
 219 (citing
 
 State v. Ramey,
 

 318 N.C. 457
 
 , 466,
 
 349 S.E.2d 566
 
 , 572 (1986) (stating that "[i]t is unlikely that the jury gave great weight to the fact that a mother believed that her son was truthful") ).
 

 Assuming,
 
 arguendo
 
 , that the admission of this portion of Ms. Isaacs's testimony was improper in the present case, defendant has failed to demonstrate that the jury would have probably reached a different result absent the error, for the same reasons that this Court stated in
 
 Dew
 
 .
 
 See
 

 Dew
 
 ,
 
 225 N.C. App. at 756
 
 ,
 
 738 S.E.2d at 219
 
 . It is not likely that the jury's decision to convict defendant was significantly impacted by a mother's statement that her daughter "would tell [her] the truth" about an incident of sexual abuse. We find no plain error.
 

 B. Detective Carter's Testimony
 

 Defendant next argues that Detective Carter's testimony at trial improperly vouched for V.R.'s credibility and was plain error. We disagree.
 

 *116
 
 Again, lay witness "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701. However, as our Supreme Court has stated:
 

 The instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking,
 
 matters of fact,
 
 and are admissible in evidence.
 

 State v. Lloyd
 
 ,
 
 354 N.C. 76
 
 , 109,
 
 552 S.E.2d 596
 
 , 620 (2001) (citation omitted) (emphasis added).
 

 Here, Detective Carter testified about his observation of V.R.'s demeanor during Detective Carter's interview with V.R., as follows:
 

 Q. And did you make any observations of [V.R.]'s demeanor during the time that you interacted with her?
 

 A. Her responses seemed to be thoughtful. She paused several times while telling the story, just trying to recollect, and with each account she looked at the ground or looked downward several times, seemed to
 
 *485
 
 be genuinely affected by what had occurred.
 

 Defendant maintains that this testimony was the functional equivalent of vouching for V.R.'s credibility. We disagree.
 

 This testimony concerning V.R.'s demeanor does not constitute an opinion as to the credibility of V.R. that is subject to Rule 701.
 
 See
 

 State v. Gobal
 
 ,
 
 186 N.C. App. 308
 
 , 318,
 
 651 S.E.2d 279
 
 , 286 (2007). Rather, Detective Carter's testimony contains precisely the type of "instantaneous conclusions" our Supreme Court considers to be admissible "shorthand statements of fact."
 
 Id
 
 . ;
 
 State v. Braxton,
 

 352 N.C. 158
 
 , 187,
 
 531 S.E.2d 428
 
 , 445 (2000),
 
 cert. denied,
 

 531 U.S. 1130
 
 ,
 
 121 S.Ct. 890
 
 ,
 
 148 L.Ed. 2d 797
 
 (2001). Accordingly, there was no error in the admission of this testimony.
 

 C. Nurse Davis's Testimony
 

 Defendant also argues that the trial court abused its discretion in admitting certain opinion testimony from Nurse Davis as in effect vouching for V.R.'s credibility, over defendant's objection at trial. We find defendant's argument to be without merit.
 

 *117
 
 Under North Carolina law, it is well established that "the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence."
 
 State v. Bailey
 
 ,
 
 89 N.C. App. 212
 
 , 219,
 
 365 S.E.2d 651
 
 , 655 (1988) (citations omitted). "In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has
 
 in fact
 
 occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility."
 
 State
 

 v. Stancil
 
 ,
 
 355 N.C. 266
 
 , 266-67,
 
 559 S.E.2d 788
 
 , 789 (2002) (per curiam) (citation omitted) (emphasis in original). "However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith."
 

 Id.
 

 (citations omitted).
 

 In the present case, Nurse Davis gave the following testimony to which defendant assigns error:
 

 Q.... With regard to a finding, such as the erythema or redness, could that sort of redness be caused by touching of some sort?
 

 A. Yes, it could.
 

 Q. Could it also be caused by other things?
 

 A. Yes.
 

 Q. And what other types of things might cause that?
 

 A. If a little girl doesn't clean herself well. If there were more aggressive touching, it would probably be redder. There could be abrasions there and they weren't noted. So as far as what else, if there were infection, I mean, it could be, you know, a multitude of things.
 

 ...
 

 Q. Yes. Do you have an opinion to a reasonable degree of medical certainty as to whether your physical examination of [V.R.] was consistent with the medical history that you received of touching?
 

 A. Yes. It was consistent.
 

 Q. And it's fair to say, again, that it could also be consistent with other things, as well?
 

 A. Yes.
 

 *118
 
 Nurse Davis stated that the erythema was consistent with touching, but also could be consistent with "a multitude of things." We fail to see how this testimony improperly vouches for V.R.'s credibility and we find defendant's arguments unconvincing. This testimony, that erythema is "consistent" with touching, is not tantamount to vouching for V.R.'s credibility. Accordingly, the admission of this testimony was not an abuse of discretion by the trial court, nor did it constitute prejudicial error.
 

 II. Jury Questions
 

 Next, defendant contends that the trial court committed reversible error by failing to receive and address jury questions before the entire jury panel in the courtroom, in violation of both N.C. Gen. Stat. § 15A-1233(a) and Article I, Section 24 of the North Carolina Constitution. After careful review, we conclude that while the trial court erred by failing to conduct the jury to the courtroom as required by N.C. Gen. Stat. § 15A-1233(a), there was no showing that this error
 
 *486
 
 was prejudicial or that there was a constitutional violation.
 

 N.C. Gen. Stat. § 15A-1233(a) provides, in relevant part:
 

 If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.
 

 N.C. Gen. Stat. § 15A-1233(a) (2017). Article I, Section 24 of the North Carolina Constitution states that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. Art I, § 24. This provision of our Constitution has been interpreted as prohibiting "the trial court [from] provid[ing] explanatory instructions to less than the entire jury [as a] violat[ion] [of] the defendant's constitutional right to a unanimous jury verdict."
 
 State v. Wilson
 
 ,
 
 363 N.C. 478
 
 , 483,
 
 681 S.E.2d 325
 
 , 329 (2009).
 

 In advancing his argument, defendant relies on our Supreme Court's decisions in
 
 State v. Ashe
 
 ,
 
 314 N.C. 28
 
 ,
 
 331 S.E.2d 652
 
 (1985), and
 
 State v. Wilson
 
 ,
 
 363 N.C. 478
 
 ,
 
 681 S.E.2d 325
 
 (2009). In
 
 Ashe
 
 , the jury foreman returned to the courtroom alone after the jury had retired to deliberate, where he had the following exchange with the presiding judge:
 

 *119
 
 The Court: Mr. Foreman, the bailiff indicates that you request access to the transcript?
 

 Foreman: We want to review portions of the testimony.
 

 The Court: I'll have to give you this instruction. There is no transcript at this point. You and the other jurors will have to take your recollection of the evidence as you recall it and as you can agree on that recollection in your deliberations.
 

 Ashe
 
 ,
 
 314 N.C. at 33
 
 ,
 
 331 S.E.2d at 655-56
 
 . Our Supreme Court held that the trial court violated Article I, Section 24 and N.C. Gen. Stat. § 15A-1233(a) by failing to summon all of the jurors to the courtroom before hearing and responding to the jury's request to review the trial transcript.
 
 Id
 
 . at 40,
 
 331 S.E.2d at 659
 
 .
 

 In
 
 Wilson
 
 , after being notified by the jury of concerns regarding the foreperson, "the trial court summoned only the foreperson and provided him with instructions on and off the record that it did not provide to the rest of the jury."
 
 Wilson
 
 ,
 
 363 N.C. at 487
 
 ,
 
 681 S.E.2d at 332
 
 . Furthermore,
 

 following the third unrecorded bench conference with the foreperson, the trial court informed the foreperson that it needed to give him 'one other instruction' and instructed him that '[t]he issues about which we had talked in this courtroom,
 
 both here at the bench and also openly on the record,
 
 are issues [that you] are not to share with the other jurors.'
 

 Id
 
 . Applying the principles from
 
 Ashe
 
 , the Court concluded that "the trial court provided the foreperson with instructions that it did not provide to the rest of the jury in violation of defendant's right to a unanimous jury verdict."
 
 Id
 
 . at 486,
 
 681 S.E.2d at 331
 
 . The Court further held "that where the trial court instructed a single juror in violation of defendant's right to a unanimous jury verdict under Article I, Section 24, the error is deemed preserved for appeal notwithstanding defendant's failure to object."
 
 Id
 
 .
 

 The facts of the instant case are, however, more closely analogous to those presented in
 
 State v. McLaughlin
 
 ,
 
 320 N.C. 564
 
 ,
 
 359 S.E.2d 768
 
 (1987). In
 
 McLaughlin
 
 , after retiring for deliberation, the jury sent the trial judge a note requesting that the trial testimony of two witnesses be reread.
 
 McLaughlin
 
 ,
 
 320 N.C. at 567
 
 ,
 
 359 S.E.2d at 770
 
 . "The trial judge sent a message to the jury, through the bailiff, denying the jury's request. The record [did] not indicate whether the judge's message was in written form or transmitted orally by the bailiff."
 

 *120
 

 Id
 
 . at 567-68,
 
 359 S.E.2d at 771
 
 . Our Supreme Court held that, while the trial court erred "by not adhering to the requirements of [ N.C. Gen. Stat. § 15A-1233(a) ]," it was not a prejudicial error or a violation of Article I, Section 24.
 
 Id
 
 . at 568,
 
 359 S.E.2d at 771
 
 . Moreover,
 
 *487
 
 the Court clarified that the reference to Article I, Section 24 in
 
 Ashe
 
 "was intended to convey no more than the seemingly obvious proposition that for a trial judge to give explanatory instructions to fewer than all jurors violated only the unanimity requirement imposed on jury verdicts by Article I, [S]ection 24."
 
 McLaughlin
 
 ,
 
 320 N.C. at 569
 
 ,
 
 359 S.E.2d at 772
 
 .
 

 In the present case, the jury sent two notes to the trial court, one requesting the police reports, and another requesting transcripts of trial testimony. On both occasions, the bailiff brought these notes into the courtroom to the judge and delivered the judge's written responses to the jury. While this is error because the trial court failed to comply with the provisions of N.C. Gen. Stat. § 15A-1233(a), there was no violation of defendant's right to a unanimous verdict under Article I, Section 24. The trial court did not interact with or provide instructions to less than a full jury panel.
 

 Additionally, a new trial is not warranted as there is no showing that the error prejudiced defendant. "A new trial may be granted only if the trial court's error was such that 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached.' "
 
 Id
 
 . at 570,
 
 359 S.E.2d at 772
 
 (quoting N.C. Gen. Stat. § 15A-1443(a) and citing
 
 State v. Loren
 
 ,
 
 302 N.C. 607
 
 ,
 
 276 S.E.2d 365
 
 (1981) ). Here, the trial court could not allow the jury to review police reports that were not in evidence, and there was no showing of prejudice to defendant in the trial court's decision not to delay deliberations in order to have a transcript produced of the testimony of the State's witnesses. We find no prejudicial error.
 

 Conclusion
 

 For the reasons stated herein, we conclude that defendant received a fair trial, free from plain or prejudicial error.
 

 NO ERROR.
 

 Judges ELMORE and TYSON concur.
 

 [1]
 

 To protect her privacy, in this opinion we refer to the alleged victim by her initials.