STATE OF NORTH CAROLINA v. LEKKIE CONSTANTINE WILSON

No. 436A08

(Filed 28 August 2009)

**1. Appeal and Error— preservation of issues—failure to object—right to a unanimous jury verdict**

The Court of Appeals did not err in an armed robbery case by concluding defendant's assignment of error, based on the trial court's instructions to a single juror that violated defendant's right to a unanimous jury verdict under Article I, Section 24 of the North Carolina Constitution, was preserved for appeal notwithstanding defendant's failure to object because: (1) it is well established that for the trial court to provide explanatory instructions to less than the entire jury violates the defendant's constitutional right to a unanimous jury verdict; (2) N.C. R. App. P. 10(b)(1) recognizes that errors may be "deemed preserved" "by rule or law" without any action by the parties; and (3) while the failure to raise a constitutional issue at trial generally waives that issue for appeal, where the error violates the right to a unanimous jury verdict under Article I, Section 24, it is preserved for appeal without any action by counsel since the right to a unanimous jury verdict is fundamental to our system of justice.

**2. Constitutional Law–denial of unanimous verdict— harmless error analysis—new trial**

The Court of Appeals did not err in an armed robbery case by granting defendant a new trial based on the trial court's instructions to a single juror that violated defendant's right to a unanimous jury verdict under Article I, Section 24 of the North Carolina Constitution since the State failed to show the error was harmless beyond a reasonable doubt because, for the State to meet its burden, the record must reveal the substance of the conversations at issue or the conversations must be adequately reconstructed, and the record in the present case does not disclose the substance of the trial court's unrecorded bench conferences with the foreperson, nor have the conversations been reconstructed.

Justice BRADY dissenting.

Justice NEWBY joins in the dissenting opinion.

**STATE v. WILSON**

[363 N.C. 478 (2009)]

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 192 N.C. App. ——, 665 S.E.2d 751 (2008), reversing judgments entered 2 February 2007 by Judge Jack W. Jenkins in Superior Court, Carteret County, and ordering that defendant receive a new trial. Heard in the Supreme Court 24 February 2009.

*Roy Cooper, Attorney General, by Kevin Anderson, Assistant Attorney General, for the State-appellant.*

*L. Jayne Stowers for defendant-appellee.*

TIMMONS-GOODSON, Justice.

In this case we consider whether defendant waived appellate review by failing to object to instructions by the trial court to a single juror. We hold that, because the trial court's instructions to a single juror violated defendant's right to a unanimous jury verdict under Article I, Section 24 of the North Carolina Constitution, the error was preserved for appeal notwithstanding defendant's failure to object. We further hold that the State failed to show the error was harmless beyond a reasonable doubt. Accordingly, we affirm the decision of the Court of Appeals granting defendant a new trial.

## Background

Defendant Lekkie Constantine Wilson was tried on 30 January 2007 in Superior Court, Carteret County for armed robbery and conspiracy to commit armed robbery. The State's evidence tended to show that on the evening of 16 October 2005, defendant and Tavoris Courtney robbed a convenience store in Newport, North Carolina, of over one thousand dollars in cash. Defendant's wife worked as a clerk in the store on the night of the robbery. Courtney testified that defendant helped plan the robbery and drove the getaway car after Courtney entered the store armed with a handgun and demanded money from defendant's wife. Defendant's evidence tended to show that Courtney's testimony was inconsistent with prior written statements in which Courtney denied defendant's involvement. Defendant also presented evidence that Courtney received a substantially reduced bond in exchange for his testimony for the State.

On 1 February 2007, after the close of the evidence, the trial court instructed the jury regarding the relevant law. The jury then retired to the jury room and began deliberations. Approximately twenty minutes after retiring for deliberations, the jury notified the deputy that

there was a problem with the foreperson that needed to be addressed on the record. Instead of summoning all the jurors to the courtroom to hear the jury's request, the trial court proposed to the attorneys that only the foreperson be summoned. The trial court asked counsel for the State and counsel for defendant whether they objected to this procedure, and neither stated an objection.

The trial court summoned only the foreperson and held the following exchange with the foreperson on the record:

THE COURT: It's my understanding there may be some issue you may need to address and to the extent you're comfortable telling me, can you tell me what THE [sic] nature of the concern is?

FOREPERSON: They seem to think that I already have my mind made up.

THE COURT: You come here and if counsel will come up here, please.

Calling the foreperson, counsel for the State, and counsel for defendant to the bench, the trial court conducted an unrecorded bench conference. The trial court then asked the foreperson to step aside and conducted an unrecorded bench conference with both counsel. The trial court then asked both counsel to return to their places and held the following conversation with the foreperson on the record:

THE COURT: Sir, to make sure I understand then, there is an issue that has arisen regarding your opinion about the case basically, is that right?

FOREPERSON: Yes.

THE COURT: Issue between you and the other jurors?

FOREPERSON: Yes.

THE COURT: This is an issue that I believe you and the other jurors need to handle in the jury room.

FOREPERSON: I need to say one more thing.

THE COURT: Yes, sir. Go on.

FOREPERSON: I can't . . .

Calling the foreperson to the bench once more, the trial court conducted a second unrecorded bench conference with the foreper-

**STATE v. WILSON**

[363 N.C. 478 (2009)]

son, counsel for the State, and counsel for defendant. The court then summoned the remaining eleven jurors and instructed the entire jury as follows:

> You all have a duty to consult with one another and deliberate with a view toward reaching an agreement, if it can be done without violence to individual judgment. Each of you must decide the case for yourself but only after an impartial consideration of the evidence with your fellow jurors. In the course of deliberations, each of you should not hesitate to reexamine your own views and change your opinion, if it is erroneous, but none of you should surrender your honest conviction as to the weight of the evidence solely because of the opinion of your fellows [sic] jurors or for the purpose of returning a verdict.

After giving the jury these instructions, the trial court directed the jurors, with the exception of the foreperson, to return to the jury room but not to resume deliberations. The trial court conducted a third unrecorded bench conference with the foreperson and counsel. The trial court then engaged in the following colloquy with the foreperson on the record:

> THE COURT: [O]ne other instruction I want to give you first and then have the other jurors come back out.

> The issues about which we had talked in this courtroom, both here at the bench and also openly on the record, are issues that you are not to share with the other jurors and I do not wish for you to go back in there and somehow talk about what we talked about here or anything else.

> Do you understand that?

> FOREPERSON: Yes, sir.

> THE COURT: It's my understanding based on what you have said up here that I do believe you can continue to be a fair and impartial juror in this case, consider the evidence you've heard, the contentions of counsel, instructions of the court and proceed accordingly, is that correct?

> FOREPERSON: Yes, sir.

> THE COURT: And at this time, do you know of any reason why you cannot continue as a juror in this case?

> FOREPERSON: No, sir.

STATE v. WILSON

[363 N.C. 478 (2009)]

After summoning the rest of the jury back to the courtroom, the trial court instructed the entire jury as follows:

> Ladies and gentlemen of the jury, this is a formality but I do need to bring you back out to tell you all twelve as a group that you may retire back to the jury room and resume your deliberations, all of you as a group to go back there and continue your deliberations.

At approximately 4:00 p.m., the jury returned to the jury room and resumed deliberations. The trial court summoned the jury to the courtroom at approximately 4:55 p.m. and recessed for the day. On 2 February 2007, the jury continued deliberations from approximately 8:49 a.m. until 11:59 a.m. The jury returned verdicts finding defendant guilty of armed robbery and conspiracy to commit armed robbery. The trial court arrested judgment on the conspiracy offense and sentenced defendant to a term of forty-eight to sixty-eight months imprisonment for the armed robbery offense. Defendant appealed.

The Court of Appeals held that (1) the trial court violated defendant's right to a unanimous jury verdict under Article I, Section 24 of the North Carolina Constitution by giving instructions to the foreperson that it did not give to the rest of the jury, (2) the error was preserved for appeal notwithstanding defendant's failure to object at trial, and (3) the State failed to show the error was harmless beyond a reasonable doubt. *State v. Wilson*, —— N.C. App. ——, ——, ——, 665 S.E.2d 751, 753, 755-56 (2008). The dissent in the Court of Appeals concluded that defendant waived his right to appellate review and failed to show that the trial court's conversations with the foreperson constituted plain error. *Id.* at ——, 665 S.E.2d at 758-59 (Tyson, J., dissenting). The State appeals on the basis of the dissent.

## Analysis

Based upon the dissent in the Court of Appeals, the only questions presented for our consideration are (1) whether by failing to object at trial, defendant waived his argument that the trial court violated his right to a unanimous jury verdict and (2) whether defendant is entitled to a new trial under the applicable standard of review. *See* N.C. R. App. P. 16(b). We address each question in turn.

### The Right to a Unanimous Jury Verdict

Article I, Section 24 of the North Carolina Constitution states that "[n]o person shall be convicted of any crime but by the unanimous

verdict of a jury in open court." N.C. Const. art. I, § 24. The unanimity provision requires the trial court to summon all jurors before hearing a request from the jury and before giving additional instructions. *State v. Ashe*, 314 N.C. 28, 40, 331 S.E.2d 652, 659 (1985). In *Ashe*, the jury requested a review of the trial transcript during the defendant's trial for first-degree murder. Without objection, the trial court summoned only the foreperson and held the following colloquy on the record:

> THE COURT: Mr. Foreman, the bailiff indicates that you request access to the transcript?
>
> FOREMAN: We want to review portions of the testimony.
>
> THE COURT: I'll have to give you this instruction. There is no transcript at this point. You and the other jurors will have to take your recollection of the evidence as you recall it and as you can agree upon that recollection in your deliberations.

*Id.* at 33, 331 S.E.2d at 655-56. We held that the trial court violated Article I, Section 24 and N.C.G.S. § 15A-1233(a) by failing to summon the entire jury before hearing and addressing the jury's request to review the trial transcript. *Id.* at 40, 331 S.E.2d at 659. We later explained in *State v. McLaughlin*, 320 N.C. 564, 569, 359 S.E.2d 768, 772 (1987), that our reference to Article I, Section 24 in *Ashe* "was intended to convey no more than the seemingly obvious proposition that for a trial judge to give explanatory instructions to fewer than all jurors violated . . . the unanimity requirement imposed on jury verdicts by Article I, section 24."

Similarly, in *State v. Nelson*, 341 N.C. 695, 698, 462 S.E.2d 225, 226 (1995), the jury requested a review of evidence during the defendant's trial for second-degree rape and first-degree kidnapping. Without objection, the trial court summoned only the foreperson, asked him questions, and instructed him not to tamper with the evidence in the jury room. *Id.* at 698-700, 462 S.E.2d at 226-27. Citing *Ashe*, we explained that "the failure to require all jurors to return to the courtroom to ask a question of the court violates . . . the unanimous verdict requirement of Article I, Section 24 of the North Carolina Constitution." *Id.* at 700-01, 462 S.E.2d at 227-28. Thus, it is well established that for the trial court to provide explanatory instructions to less than the entire jury violates the defendant's constitutional right to a unanimous jury verdict. We must therefore decide whether defendant's failure to object at trial defeats his ability to raise this issue on appeal.

*Preservation of Issue for Appeal*

[1] The State contends that by failing to object at trial, defendant waived appellate review of whether the trial court's conversations violated his constitutional right to a unanimous jury verdict. According to the State, Rule of Appellate Procedure 10(b)(1) and controlling case law prevent defendant from raising his constitutional challenge for the first time on appeal. We disagree.

Rule 10(b)(1) sets forth the following requirements for preserving errors for appeal:

> Any such question which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted *or which by rule or law was deemed preserved or taken without any such action*, may be made the basis of an assignment of error in the record on appeal.

N.C. R. App. P. 10(b)(1) (emphasis added). On its face, Rule 10(b)(1) recognizes that errors may be "deemed preserved" "by rule or law" without any action by the parties. *Id.*

While the failure to raise a constitutional issue at trial generally waives that issue for appeal, *see, e.g., Ashe*, 314 N.C. at 39, 331 S.E.2d at 659, where the error violates the right to a unanimous jury verdict under Article I, Section 24, it is preserved for appeal without any action by counsel. *Nelson*, 341 N.C. at 700, 462 S.E.2d at 227 (citing *Ashe* for the proposition that "the failure to object does not prevent the defendant from appealing"); *Ashe*, 314 N.C. at 39, 331 S.E.2d at 659; *see also* N.C. R. App. P. 10 drafting comm. comment., para. 3, *reprinted in* 287 N.C. 698, 701 (1975) (noting that some objections may be " 'deemed' taken without *any* action by counsel simply because the error is considered sufficiently fundamental"). In *Ashe*, for example, the State argued that, even if the trial court violated Article I, Section 24 by instructing a single juror, the defendant waived appellate review because he did not object at trial. 314 N.C. at 39, 331 S.E.2d at 659. We held that Article I, Section 24 "require[s] the trial court to summon all jurors into the courtroom before hearing and addressing a jury request to review testimony" and the trial court's failure to do so "entitles [the] defendant to press these points on appeal, notwithstanding a failure to object at trial." *Id.* at 40, 331 S.E.2d at 659. Similarly, in *Nelson* we rejected any notion that the defendant waived appellate review of his Article I, Section 24 argument by failing to object at trial and the State's assertion that defend-

ant could not later complain because his attorney purportedly suggested the unconstitutional procedure at issue in the case. 341 N.C. at 700, 462 S.E.2d at 227.

Contrary to this precedent, the State echoes the dissent in the Court of Appeals by arguing that our decision in *State v. Tate*, 294 N.C. 189, 239 S.E.2d 821 (1978), rather than *Ashe*, is controlling authority in this case. In *Tate*, twice during defendant's trial, a single juror asked or began to ask questions addressed to the trial court. *Id.* at 197, 239 S.E.2d at 827. Each time, the judge called the particular juror to the bench and held an unrecorded bench conference outside the presence of counsel for the defendant and counsel for the State. *Id.* The defendant's sole argument on appeal was that "in terms of simple fairness the trial court should have immediately informed the defendant and his counsel of the nature of the conversations." Thus, the issue in *Tate* was the defendant's right to be present at every stage of the trial under Article I, Section 23. *See State v. Boyd*, 332 N.C. 101, 104-05, 418 S.E.2d 471, 473 (1992) (explaining the basis of our holding in *Tate*). Unlike the right to a unanimous jury verdict under Article I, Section 24, the right to be present at every stage of the trial under Article I, Section 23 may be waived by noncapital defendants. *Id.* at 105, 418 S.E.2d at 473. Accordingly, we held in *Tate* that the defendant waived appellate review of the trial court's unrecorded conversations by failing to object at trial. In so holding, we explained our reasoning as follows:

> We are of the opinion that the trial court's private conversations with jurors were ill-advised. The practice is disapproved. At least, the questions and the court's response should be made in the presence of counsel. The record indicates, however, that defendant did not object to the procedure or request disclosure of the substance of the conversation. Failure to object in apt time to alleged procedural irregularities or improprieties constitutes a waiver.

294 N.C. at 198, 239 S.E.2d at 827 (citations omitted).

In relying on *Tate* for its waiver argument, the State overlooks that defendant in the instant case appeals from the violation of his right to a unanimous jury verdict under Article I, Section 24 rather than his right to be present at every stage of the trial under Article I, Section 23. Further, while the conversations in *Tate* may fairly be characterized as innocuous "procedural irregularities," the same cannot be said for the trial court's conduct in this case. The record

reveals that the trial court gave the foreperson instructions during its recorded and unrecorded conversations in violation of defendant's right to a unanimous jury verdict. The trial court's exchanges with the foreperson were prompted by the jury's belief that "that [the foreperson] already ha[d] [his] mind made up" regarding defendant's guilt or innocence. Rather than summoning and instructing the entire jury as to how to resolve this matter, the trial court instructed only the foreperson that "[t]his is an issue that . . . [the foreperson] and the other jurors need[ed] to handle in the jury room." Further, immediately following the third unrecorded bench conference with the foreperson, the trial court stated that it needed to give him "one other instruction" before admonishing him not to divulge to the remaining jurors the substance of his conversations with the trial court. These facts compel the conclusion that the trial court provided the foreperson with instructions that it did not provide to the rest of the jury in violation of defendant's right to a unanimous jury verdict.[1] We therefore conclude that *Ashe* and *Nelson* control rather than *Tate*.

Consistent with this precedent, we hold that where the trial court instructed a single juror in violation of defendant's right to a unanimous jury verdict under Article I, Section 24, the error is deemed preserved for appeal notwithstanding defendant's failure to object. In so holding, we adhere to the principle that the right to a unanimous jury verdict is fundamental to our system of justice. *See* N.C. Const. art. I, § 24; N.C. Const. of 1868, art. I, § 13; N.C. Const. of 1776, Declaration of Rights § 9; *State v. Hudson*, 280 N.C. 74, 79, 185 S.E.2d 189, 192 (1971); *State v. Stewart*, 89 N.C. 563, 564 (1883); *State v. Moss*, 47 N.C. (2 Jones) 66, 68 (1854). While Appellate Rule 10(b)(1) protects judicial economy and speaks to our adversarial system of justice by requiring the parties to object in the majority of instances, it nevertheless recognizes that some questions may be deemed preserved for review by rule or law. Pursuant to *Ashe*, the trial court's error in providing instructions to a single juror in the case at bar constitutes such a question.

### Harmless Error

**[2]** Having determined that defendant's constitutional argument was preserved for appeal, we next consider whether defendant is entitled

---

1. The dissent characterizes the conversations between the trial court and the foreperson as mere "bench conferences" and surmises that this opinion "will lead to inconsistency and confusion in future cases" and a "chilling effect on juror communication." *Post* at 8-9, 18. However, those dire consequences will be avoided because our holding is limited to instructions and not all communications between judge and juror.

to a new trial as a result of the trial court's error. Following its contention that defendant waived appellate review, the State engages primarily in plain error analysis rather than harmless error analysis. According to the State, defendant cannot meet his burden under plain error review because he has failed to show that he was prejudiced by the trial court's conversations and because there was strong evidence at trial supporting the jury's verdict. In the event that this Court conducts harmless error review, the State argues that for the same reasons, the trial court's error was harmless beyond a reasonable doubt. We agree with defendant that the proper standard of review in the instant case is harmless error and conclude that the State's arguments are insufficient to meet its burden.

Where the error violates a defendant's right to a unanimous jury verdict under Article I, Section 24, we review the record for harmless error. *Nelson*, 341 N.C. at 700-01, 462 S.E.2d at 227-28; *see Ashe*, 314 N.C. at 36-39, 331 S.E.2d at 657-59 (applying the harmless error test and concluding that the defendant was entitled to a new trial). The State bears the burden of showing that the error was harmless beyond a reasonable doubt. *Nelson*, 341 N.C. at 701, 462 S.E.2d at 228. "An error is harmless beyond a reasonable doubt if it did not contribute to the defendant's conviction." *Id.*

In the instant case, the State's arguments are inadequate to show harmless error beyond a reasonable doubt. The record reveals that the jury was sufficiently concerned that the foreperson "already ha[d] [his] mind made up" regarding defendant's guilt or innocence to request instructions from the trial court and to elect another foreperson. In response to the jury's request for guidance, the trial court summoned only the foreperson and provided him with instructions on and off the record that it did not provide to the rest of the jury. The trial court instructed only the foreperson that jurors needed to resolve the issue in the jury room. The trial court's failure to similarly instruct the remaining jurors may have given them the impression that the trial court had resolved the matter, foreclosing further debate on this issue during deliberations. Further, following the third unrecorded bench conference with the foreperson, the trial court informed the foreperson that it needed to give him "one other instruction" and instructed him that "[t]he issues about which we had talked in this courtroom, *both here at the bench and also openly on the record*, are issues you that are not to share with the other jurors."

While the record sufficiently reveals that the trial court violated the unanimity requirement by instructing only the foreperson, the

record is inadequate to meet the demanding task of showing that the error was harmless beyond a reasonable doubt. For the State to meet its burden, the record must reveal the substance of the conversations at issue or the conversations must be adequately reconstructed. *See, e.g., Boyd*, 332 N.C. at 106, 418 S.E.2d at 474 (holding that the State cannot demonstrate harmless error where the substance of the trial court's conversation with an excused juror was not revealed by the transcript or reconstructed at trial); *State v. Smith*, 326 N.C. 792, 794-95, 392 S.E.2d 362, 363-64 (1990) (holding that the State could not meet its burden of proving harmless error where the record did not reveal the substance of the trial court's unrecorded conversations with prospective jurors). The record in the present case does not disclose the substance of the trial court's unrecorded bench conferences with the foreperson, nor have the conversations been reconstructed.

In light of the limited record and the State's failure to present arguments that go to the proper standard of review, we hold that the State has failed to meet its burden of showing the trial court's error was harmless beyond a reasonable doubt. Accordingly, we affirm the decision of the Court of Appeals granting defendant a new trial.

AFFIRMED.

Justice BRADY dissenting.

Because it was within the discretion of the trial court to speak with the jury foreperson outside the presence of the jury, I would hold that the trial court committed no error. Furthermore, I believe that the majority's harmless error analysis jeopardizes needed juror candor. Therefore, I respectfully dissent.

The majority relies upon *State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985), and *State v. Nelson*, 341 N.C. 695, 462 S.E.2d 225 (1995), to conclude that the trial court violated defendant's constitutional right to a unanimous verdict. This approach is inappropriate because the conversations between the trial court and the foreperson were of a different nature from the conversations that occurred in *Ashe* and *Nelson*.

*Ashe* and *Nelson* each involved a jury's request to review evidence presented during trial. In *Ashe*, the jury requested to review portions of the testimony from the trial transcript. 314 N.C. at 33, 331 S.E.2d at 655-66. The trial court instructed the jury foreperson,

on the record and in the presence of counsel, that the transcript was not available and that jurors would have to depend upon their best recollections of the evidence presented. *Id.* This Court ruled that the trial court's failure to instruct the entire jury on this issue was error. 314 N.C. at 35-36, 331 S.E.2d at 656-67. The Court's holding centered on an analysis of N.C.G.S. § 15A-1233(a), which states that if a jury "after retiring for deliberation requests a review of *certain testimony* or *other evidence*, the jurors must be conducted to the courtroom." N.C.G.S. § 15A-1233(a) (2007) (emphasis added); *Ashe,* 314 N.C. at 33-36, 331 S.E.2d at 656-57. This Court further explained in *Ashe* that the harm of the error was the risk of relaying a "secondhand rendition" of the trial court's evidentiary instructions. 314 N.C. at 36, 331 S.E.2d at 657.

Likewise, in *Nelson,* the trial court received a written request from the jury to review four specific kinds of evidence presented during the trial. 341 N.C. at 698, 462 S.E.2d at 226. Because the request was ambiguous, the trial court summoned the jury foreperson to provide clarification. *Id.* at 698-700, 462 S.E.2d at 226-27. After the foreperson explained the request, the trial court provided the requested evidence and instructed the foreperson that the jury should not alter or change the items in any way. *Id.* at 700, 462 S.E.2d at 227. This Court concluded that the trial court's actions were in error based again upon just a citation to N.C.G.S. § 15A-1233 and no constitutional analysis. *Id.*

The nature of the conversations between the trial court and the jury foreperson in the instant case is completely different from the nature of the conversations in *Ashe* and *Nelson.* Here, the bailiff alerted the trial court that there was "some issue with the foreperson." At this point, the trial court did not know whether the foreperson's "issue" was related to a question of fact or law concerning the case, a procedural inquiry, or a personal problem. The trial court consulted with counsel for defendant and the State and proposed speaking with the foreperson to discover the nature of the "issue." Both attorneys agreed, on the record, with the trial court's procedure. Once in the courtroom—in the presence of the trial judge, counsel for defendant and the State, and the court reporter—the foreperson informed the trial court that "[the other jurors] seem to think that I already have my mind made up."

The foreperson's "issue" was not related to any question from the jury concerning the evidence or law related to the case; thus, neither N.C.G.S. 15A-1233(a) nor the rules established in *Ashe* and *Nelson*

STATE v. WILSON

[363 N.C. 478 (2009)]

were implicated. From the record it appears the foreperson was unsure how to proceed with deliberations given the doubts of the other jurors concerning his perceived personal partiality. The foreperson's issue fell somewhere between a procedural inquiry and a personal problem, and therefore, it was within the discretion of the trial court to handle the issue. "When there is no statutory provision or well recognized rule applicable, the presiding judge is empowered to exercise his discretion in the interest of efficiency, practicality and justice." *Shute v. Fisher*, 270 N.C. 247, 253, 154 S.E.2d 75, 79 (1967). The only well-recognized principle to which the trial court was required to adhere in this situation is that the trial court could not conduct a private bench conference with the jury foreperson:

> Our cases have long made it clear that it is error for trial judges to conduct private conversations with jurors. We said in *State v. Tate*: "[T]he trial court's private conversations with jurors were ill-advised. The practice is disapproved. At least, the questions and the court's response should be made in the presence of counsel."

*State v. Boyd*, 332 N.C. 101, 104-05, 418 S.E.2d 471, 473 (1992) (internal citations omitted) (quoting *State v. Tate*, 294 N.C. 189, 198, 239 S.E.2d 821, 827 (1978) (alteration in original)). The trial court did not violate this principle. During every bench conference with the jury foreperson, counsel for defendant and the State were present. Defense counsel was also present when the trial court spoke with the jury foreperson off the record to determine whether the foreperson could deliberate impartially. At the conclusion of the trial court's bench conferences, the State and defense counsel indicated that they were "satisfied" with the ability of the foreperson to proceed with the case.

Because the majority asserts the issue in *Tate* was "the right to be present at every stage of the trial under Article I, Section 23" of the North Carolina Constitution,[2] it finds the rule established in *Tate* and *Boyd* inapplicable to the instant case. However, the majority's strained constitutional analysis of the opinions in *Ashe* and *Nelson* is off target with the actual facts of the case before us. The

---

2. Interestingly, this Court did not decide the juror issue in *Tate* under Article I, Section 23, and the defendant did not argue an Article I, Section 23 violation. *See Tate*, 294 N.C. at 197-98, 239 S.E.2d at 827; *see also* Brief of Defendant-Appellant at 30-31, *State v. Tate*, 294 N.C. 189, 239 S.E.2d 821 (1978) (No. 97). Only later, in *State v. Boyd*, 332 N.C. at 104-05, 418 S.E.2d at 473, did this Court discuss the issue in *Tate* as an Article I, Section 23 violation.

majority states that *Nelson* "explains" that the "failure to require all jurors to return to the courtroom to *ask a question* of the court violates . . . the unanimous verdict requirement of Article I, Section 24 of the North Carolina Constitution." *Nelson*, 341 N.C. at 700-01, 462 S.E.2d at 227-28 (emphasis added). While the Court did use this language in *Nelson*, it was merely to paraphrase the holding in *Ashe*, and the characterization is too broad. The holding in *Ashe* was specific and narrow, stating: "Both Art. I, § 24 of the North Carolina Constitution and N.C.G.S. § 15A-1233(a) require the trial court to summon all jurors into the courtroom before hearing and addressing a jury request *to review testimony* and to exercise its discretion in denying or granting the request."[3] 314 N.C. at 40, 331 S.E.2d at 659 (emphasis added). *Ashe* only requires the full jury to be present when asking the trial court to review testimony or other evidence. *Ashe* does not require the full jury to be present when *any* question is asked of the trial court. *Nelson*, and now the majority, characterize *Ashe* too broadly. However, while *Nelson's* broad paraphrase of *Ashe* was inconsequential because *Nelson* also dealt with a request to review evidence under N.C.G.S. § 15A-1233, the expansive language that is applied to the instant case has the effect of rashly extending *Ashe's* holding to situations that do not involve requests to review evidence.

It is clear that the circumstances in this case are distinguishable from those the majority relies upon in *Ashe* and *Nelson*. In the instant case the record reveals that there was no jury request to review any form of evidence or testimony, nor were there any instructions given by the trial court to the foreperson relating to an evidentiary matter. Nothing in the context of the recorded conversations among the trial court, the foreperson, and attorneys for defendant and the State indicates that the trial court gave an "instruction" related to either testimony given at trial or the applicable law relevant to defendant's case. As such, *Ashe* and *Nelson* provide no basis to conclude that defendant's right to a unanimous verdict was violated.

Nonetheless, the majority attempts to characterize the conversations between the trial court and jury foreperson as the type of formal jury instructions that implicate constitutional protections under *Ashe* and *Nelson*. The majority stretches to classify the conversation between the trial court and the foreperson as a formal jury "instruc-

---

3. It should be noted that this is the only time *Ashe* mentions the North Carolina Constitution. The analysis in *Ashe* addresses the statutory violation only, with no discussion of a constitutional violation.

tion." To the contrary, the trial court gave no guidance to the foreperson on any evidentiary matter or question of law. In fact, the trial court refrained from instructing the foreperson, stating that the issue was something "[the foreperson] and the other jurors need[ed] to handle in the jury room."

Even if we were to classify this remark as a formal jury "instruction," the trial court repeated the substance of the "instruction" to the jury as a whole. In the presence of defense counsel and the State, the trial court informed the foreperson that the jury's concern regarding his impartiality was "an issue that I believe you and the other jurors need to handle in the jury room." The majority states that the trial court gave these instructions only to the foreperson and that the failure to instruct the remaining jurors "may have given [the other jurors] the impression that the trial court had resolved the matter, foreclosing further debate on the issue." The record plainly demonstrates that the majority's speculation is unfounded. Immediately after the above exchange with the foreperson, the trial court summoned all twelve jurors and stated:

> TRIAL COURT: You all have a duty to consult with one another and deliberate with a view toward reaching an agreement, if it can be done without violence to individual judgment. Each of you must decide the case for yourself but only after an impartial consideration of the evidence with your fellow jurors. In the course of deliberations, each of you should not hesitate to reexamine your own views and change your opinion, if it is erroneous, but none of you should surrender your honest conviction as to the weight of the evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict.

These remarks thoroughly informed jurors how they were to proceed in deliberations. The trial court did not contradict, but rather elaborated upon, the so-called instruction given to the foreperson moments earlier. The trial court explained that jurors were to consult with one another with the goal of reaching a verdict, that each person was to be impartial, and that jurors should deliberate honestly and openly without surrendering their personal convictions as to the weight of the evidence. In substance, the trial court communicated to the entire jury an elaborated version of what it told the foreperson.

The majority also worries that the trial court's warning to the foreperson "not to share with the other jurors" the issues they dis-

cussed during the bench conferences could be prejudicial. Again, this warning is not the type of instruction that triggers the provisions of *Ashe* and *Nelson* because it does not relate to an evidentiary matter. Moreover, this particular instruction—to not share any information discussed in the bench conferences—was likely given to alleviate the fears this Court expressed in *Ashe*. In *Ashe*, the trial court erred by instructing the jury foreperson to relay instructions to the remaining jurors. 314 N.C. at 35-36, 331 S.E.2d at 657. This procedure risked prejudice to a defendant because "rather than determining for himself or herself the import of the request and the court's response, [a juror] must instead rely solely upon their spokesperson's secondhand rendition, however inaccurate it may be." *Id.* at 36, 331 S.E.2d at 657. Here, the trial court's "instruction" to the foreperson was simply a precaution to prevent misinformation and confusion, especially considering that the trial court had already instructed the jury as a whole. Furthermore, "[w]e presume, as we must, that the jury followed the instructions as submitted to it by the trial court." *State v. Thompson*, 359 N.C. 77, 112, 604 S.E.2d 850, 875 (2004) (citation omitted), *cert. denied*, 546 U.S. 830 (2005). Thus, we trust that the whole jury properly deliberated fairly and impartially according to the trial court's instructions, which sufficiently protects defendant against any possible prejudice that may have resulted from the bench conferences with the foreperson.

Here, the trial court acted within its discretion to remedy the issue concerning the alleged impartiality of the jury foreperson. The trial court did so efficiently, while protecting the interests of defendant by insisting that defense counsel be present during all bench conferences. Furthermore, the record indicates that the trial court went to great lengths to give the full jury formal instructions and to tell the foreperson that he was not to discuss the bench conferences with the other jurors. In light of these facts, the majority's reliance on *Ashe* and *Nelson* to find error in the trial court's actions is unconvincing. Invariably, the majority's expansion of the narrow holding in *Ashe* will lead to confusion and inconsistency as trial courts grapple with jury issues. This result could be avoided by taking a common sense approach to the facts before us, which inevitably leads the analysis back to *State v. Tate*.

*Tate* involved a factual situation similar to the instant case, in which jurors in a criminal trial asked, or began to ask, questions of the trial judge on two different occasions during the trial. 294 N.C. at 197, 239 S.E.2d at 827. In both instances, the trial court summoned a

juror to the bench and engaged the juror in a private conversation.[4]
*Id.* These conversations were not recorded, and counsel for neither
the State nor the defendant was present. *Id.* at 197-98, 239 S.E.2d at
827. Before overruling the assignment of error due to the defendant's
failure to preserve the issue for appeal, this Court stated its disap-
proval of the trial court's practice of holding *private* conversations
with jurors. The Court in *Tate* stated that "[a]t least, the questions and
the court's response *should be made in the presence of counsel.*" *Id.*
at 198, 239 S.E.2d at 827 (emphasis added). Thus, *Tate* clearly implies
that a conversation between the trial court and a juror would not be
private when held in the presence of counsel.

Factually, this case is similar to *Tate* in that the trial court held
unrecorded bench conferences with a single juror; however, in the
instant case, there were no *private* conversations between the trial
court and the jury foreperson like those admonished in *Tate*. Here,
each interaction between the trial court and the foreperson was
either recorded or held in the presence of counsel for both the
defendant and the State. The trial court ensured, as this Court
advised in *Tate*, that defendant's legal advocate was present to moni-
tor the conversations and to protect defendant's rights. While the
majority distinguishes *Tate* by stating that it involved an "innocuous
procedural irregularity," the facts of the instant case more closely
resemble such a procedural irregularity than a request for evidentiary
instructions as found in *Ashe* or *Nelson*.

Additionally, the two cases the majority cites in its harmless error
analysis—*Boyd*, 332 N.C. 101, 418 S.E.2d 471, and *State v. Smith*, 326
N.C. 792, 392 S.E.2d 362 (1990)—both rely on *Tate* to determine
whether conversations between a trial court and juror amounted to
error. *Boyd* was a capital case in which the trial court conducted a
private, unrecorded bench conference with a prospective juror, then
excused the juror and deferred her service. 332 N.C. at 102, 104, 418
S.E.2d at 471, 473. Neither counsel for the defendant nor the State
was present during the conversation. *Id.* at 104, 418 S.E.2d at 473.
This Court in *Boyd* concluded that the defendant's failure to object to
the private bench conference in a capital trial did not prevent him
from raising the issue on appeal and held that the error entitled the
defendant to a new trial. *Id.* at 105-06, 418 S.E.2d at 473-74. In *Boyd*,
it is clear that the Court found error based upon the *private* nature of
the bench conference, "private" again being defined as a conversation

---

4. "Private" in this context means a conversation between only the trial court and
the juror, outside the presence of counsel and the court reporter.

between the judge and juror alone, without the presence of counsel. Had counsel been present during the bench conference in *Boyd*, it stands to reason, based upon the Court's reliance on *Tate*, that the Court would have found no error. The majority characterizes the holding in *Boyd* by stating that "the State cannot demonstrate harmless error where the substance of the trial court's conversation with an excused juror was not revealed by the transcript or reconstructed at trial"; however, a more accurate description of *Boyd's* holding would add: "or made in the presence of the defendant's counsel."

Likewise, in *Smith*, the trial court conducted private, unrecorded conversations with prospective jurors "even though counsel and the defendant were in the courtroom." 326 N.C. at 793, 392 S.E.2d at 363. Following each of the conversations, the trial court excused the prospective juror. *Id. Smith* also cites *Tate* for the proposition that "*private* communication between a judge and a seated juror [is] expressly disapproved." 326 N.C. at 794, 392 S.E.2d at 363 (emphasis added). Again, the decision in *Smith* hinges upon the private nature of the conversation that occurred outside the presence of counsel.

A finding of error in this case should likewise turn upon whether the trial court engaged in a private conversation with the jury foreperson. The record is clear that no private conversations occurred. At all times during the recorded and unrecorded bench conferences, defendant's attorney was present to monitor and participate in the conversation. The trial court even conducted a conference with only the attorneys present before deciding the issue was something the jurors must handle in the jury room. After the unrecorded bench conferences, defense counsel also communicated to the trial court, on the record, that he was satisfied with the foreperson's ability to proceed with deliberations in a fair and impartial manner. This acknowledgment by defense counsel at the conclusion of all the bench conferences during jury deliberations provides a reasonable assurance that the trial court's actions were not prejudicial to defendant.

Also, notably missing from the majority's harmless error analysis is a discussion of the overwhelming evidence of defendant's guilt. "An error is harmless beyond a reasonable doubt if it did not contribute to the defendant's conviction." *Nelson*, 341 N.C. at 701, 462 S.E.2d at 228. Evidence presented to the jury included testimony from several law enforcement officers concerning the suspicious behavior of defendant and his wife following the convenience store robbery. Deputy Greg Mason of the Carteret County Sheriff's Department tes-

tified that he stopped defendant's vehicle minutes after the robbery and that Tavoris Courtney was a passenger in the vehicle. The jury was read a transcript of Courtney's confession to law enforcement, which implicated defendant, and heard testimony from Courtney describing defendant's involvement in planning the robbery and operating the get-away vehicle. In light of this strong evidence, it is inconceivable that any portion of the conversations between the trial court, the foreperson, and counsel for the defendant and the State contributed to defendant's conviction.

Yet, instead of considering the evidence of defendant's guilt, the majority frets over the trial court's three unrecorded bench conferences conducted in the presence of defense counsel. Generally, it is prudent to record bench conferences, but the trial court should have the discretion to determine whether certain juror communications should be recorded, especially those involving matters that a juror considers sensitive or personal. If a juror believes that he or she must go on the record to ask the trial court to address potential concerns or questions, it could have the effect of chilling essential juror candor and preventing necessary communications between the jury and the trial court. The instant case provides an example. For reasons unknown to the trial court, and perhaps other jurors, the jury foreperson believed that the other jurors thought he "already had his mind made up." The following colloquy that occurred suggests that the juror may not have been comfortable explaining his concerns on the record:

THE COURT: Sir, to make sure I understand then, there is an issue that has arisen regarding your opinion about the case basically, is that right?

FOREPERSON: Yes.

THE COURT: Issue between you and the other jurors?

FOREPERSON: Yes.

THE COURT: This is an issue that I believe you and the other jurors need to handle in the jury room.

FOREPERSON: I need to say one more thing.

THE COURT: Yes, sir. Go on.

FOREPERSON: *I can't . . .*

TRIAL COURT: All right. Come up.

(Emphasis added.) After this exchange the trial court conducted a bench conference with the foreperson and counsel for both the State and defendant. Obviously, the transcript does not reflect the body language, tone of voice, or facial expressions of the foreperson, but the exchange reveals that there was likely something in the foreperson's demeanor that suggested he did not want to be "on the record," which in turn, prompted the trial court to conduct an unrecorded bench conference with the foreperson and attorneys. If the trial court were to insist that the foreperson speak on the record, as it seems the majority would have had it do, it could possibly have risked foreclosing further discussion with the foreperson. The trial court was in the best position to determine if conducting the bench conference off the record was necessary. As long as the trial court takes steps to ensure that defendant's rights are protected by including counsel in all bench conferences with jurors, it should be within the court's discretion to initially conduct conversations on or off the record.

Even if the bench conferences between the trial court, foreperson, and counsel were in error, the fact that defense counsel raised no objection to the conversations and agreed that the foreperson could proceed with deliberations in an impartial manner assures that the conversations were not prejudicial. However, if anything prejudicial did occur in the unrecorded bench conferences, statutory procedures were available to defense counsel to reconstruct the conversation for the record. It is unfair to saddle the State with the burden of proving that the substance of the unrecorded conversations was harmless beyond a reasonable doubt when defense counsel could have prompted a written preservation of the conversations by simply raising an objection to anything that caused concern. *See* N.C.G.S. § 15A-1241(c) (2007); *State v. Blakeney*, 352 N.C. 287, 307, 531 S.E.2d 799, 814 (2000) (stating that if a party "requests that the subject matter of a private bench conference be put on the record for appellate review, section 15A-1241(c) requires the trial judge to reconstruct the matter discussed as accurately as possible" (citation omitted)), *cert. denied*, 531 U.S. 1117 (2001). Defense counsel's failure to make this request is the very reason the majority must speculate as to the occurrence of a constitutional error and its effect on the outcome of defendant's trial. In *State v. Lee*, this Court responded to the defendant's complaints about unrecorded bench conferences by stating: "In the event that anything prejudicial to the defendant occurred during these bench conferences, it was the duty of defense counsel, who were aware that the conferences were not being recorded, to have

**STATE v. WILSON**

[363 N.C. 478 (2009)]

the record reflect the substance of the prejudicial matter." 335 N.C. 244, 266, 439 S.E.2d 547, 557, *cert. denied,* 513 U.S. 891 (1994). The majority's failure to adhere to this well-settled principle is remarkable, and it creates an incentive for attorneys to be less than vigilant in preventing error during trial in hopes that some inaction will benefit their clients on appeal.

Additionally, the Rules of Appellate Procedure allow defendant to furnish the appellate court a summary narration of the unrecorded bench conferences. N.C. R. App. P. 9(c)(1).[5] If anything prejudicial occurred during these unrecorded conferences, defendant has the burden under Rule 9(c)(1) to provide the Court with a summary of the objectionable material so that the Court is not forced to speculate about the alleged error. *Id.; see also State v. Daughtry,* 340 N.C. 488, 508, 459 S.E.2d 747, 756 (1995) (stating that this Court refuses to find reversible error when a defendant's complaints "rest[ ] on pure speculation").

Moreover, even though the majority presumes that the trial court's unrecorded bench conferences were in error, the doctrine of invited error should preclude defendant from raising the issue on appeal. Section 15A-1443(c) states: "A defendant is not prejudiced by . . . error resulting from his own conduct." N.C.G.S. § 15A-1443(c) (2007). Defendant acquiesced to the very procedure about which he now complains. After the bailiff alerted the trial court that there was "some issue with the foreperson," the trial court consulted both the State and defendant's counsel, stating: "What I propose to do is bring the foreperson out—just the foreperson, not all of them—but from the foreperson find out what the nature of the issue is. Any objection to proceed in that fashion?" Both the State and defense counsel responded: "No, sir." "Ordinarily one who causes (or we think joins in causing) the court to commit error is not in a position to repudiate his action and assign it as ground for a new trial. . . . Invited error is not ground for a new trial." *State v. Payne,* 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971) (citations omitted). In *Payne,* this Court precluded the defendant from complaining on appeal about the reading of testimony to the jury, when he stated his objection to the trial court only after previously consenting to the action. *See id.* Similarly, defense counsel here expressly consented to the trial court's proposal to only summon the jury foreperson to the courtroom. This express consent should preclude our consideration of error on appeal. Again, by ig-

---

5. Rule 9(c) applies to testimonial evidence, as well as "other trial proceedings necessary to be presented for review by the appellate court." N.C. R. App. P. 9(c).

noring the invited error doctrine, the majority establishes precedent that rewards parties for injecting possible error into the trial in hopes of profiting from it on appeal.

Finally, the Rules of Appellate Procedure should preclude this Court from considering this issue on appeal altogether. Rule 10(b) requires that to preserve an issue for appellate review, an appellant must "present[ ] to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desire[s] the court to make" and "to obtain a ruling upon the . . . request, objection or motion." N.C. R. App. P. 10(b)(1). This rule carries no less weight when the alleged trial error is constitutional in nature. *See, e.g., State v. Gainey*, 355 N.C. 73, 110, 558 S.E.2d 463, 486 ("[C]onstitutional questions not raised before the trial court will not be considered on appeal."), *cert. denied*, 537 U.S. 896 (2002). As noted, defense counsel found nothing objectionable to the bench conferences during jury deliberations. As such, Rule 10(b) bars defendant's complaint from this Court's review.

The majority misses the mark on all fronts. The inappropriate adherence to *Ashe* and *Nelson* ignores the facts of this case and strips trial courts of needed discretion. The result is an expansion of the holding in *Ashe* that will lead to inconsistency and confusion in future cases. Furthermore, the majority's harmless error analysis essentially admonishes the trial court for promoting juror candor and will have a chilling effect on juror communication. Finally, by ignoring the doctrine of invited error and not adhering to Appellate Rule 10(b), the majority allows itself to engage in speculation and assumption. This approach promotes future inefficiency and legal risk-taking at the expense of justice. Accordingly, I respectfully dissent.

Justice NEWBY joins in this dissenting opinion.