ZACHARY, Judge.
Defendant Caleb E. Wardrett appeals from a judgment entered upon a jury verdict finding him guilty of possession of a firearm by a felon. After careful review, we decline to invoke Rule 2 in order to review the merits of Defendant's unpreserved arguments concerning the constitutionality of the seating of two jury members. In addition, we hold that the admission into evidence of expert ballistics testimony and of Defendant's 17-year-old armed robbery conviction did not amount to plain error.
Background
On 25 April 2016, Defendant was indicted for the first-degree murder of Anthony Howard and for possession of a firearm by a felon. Defendant was tried before a jury beginning on 9 October 2017.
The evidence presented at trial tended to show that a group of individuals was gathered at a residence located on Carroll Avenue in Rocky Mount on the late evening of 23 December 2015 and early morning of 24 December 2015. Defendant and the victim were among the individuals present.
Al-Terrick Parker testified for the State at Defendant's trial. Mr. Parker testified that he had known Defendant and the victim for most of his life, and that Mr. Parker was present at Carroll Avenue on the evening in question. Defendant, Mr. Parker, and others had been drinking and socializing at the Carroll Avenue residence for roughly one hour before the victim arrived. Mr. Parker testified that when the victim went to retrieve liquor from the trunk of his vehicle, Defendant pulled a gun and
But[t][1] it to [the victim's] head like right here and then [the victim] went whoa what you doing, man? Hey, what you doing? ... I ain't done nothing. So, after that, he pointed the gun down and started shooting it. [The victim] fell to his knees and started shooting some more. His body started shaking and then I heard someone come around, stop what you doing? Stop bro, stop. Threw him to the ground, put the gun to his back. I took off running and I heard the last shot, pop.
Mr. Parker was then asked, "So you saw [Defendant] with the gun and shoot [the victim]?" Mr. Parker responded, "Yes." Rocky Mount Police officers responded to the Carroll Avenue residence roughly three minutes after the shots were fired, but everyone had fled the scene by the time that officers arrived.
Around 10:00 a.m. on 24 December 2015, Alford Lancaster received a phone call informing him that a vehicle was stuck on a piece of property that his father owned on Rick Boone Road in Franklin County. Mr. Lancaster traveled to the Rick Boone Road property, where he found a vehicle together with what appeared to be a dead body lying nearby. Mr. Lancaster immediately called the Franklin County Sheriff's Office, and Investigator Rhonda Coyne was among those who arrived to investigate the scene. Investigator Coyne located the victim's deceased body and the victim's gold Honda Accord, as well as a Taurus 9mm handgun that was lying in the tire tracks next to the vehicle.
Defendant's DNA was found on the Taurus 9mm handgun that was recovered from the Rick Boone Road scene, as well as throughout the interior and exterior of the Honda Accord. Eugene Bishop, the State's expert in ballistics comparisons, testified that he received for comparison the Taurus 9mm handgun, eight fired casings that were recovered from outside the Carroll Avenue residence, and "two bullet jacket fragments" that were recovered from the victim's body. Mr. Bishop testified that he was able to determine "that the bullets from the victim's body and the casings from Carroll Avenue were fired from State's Exhibit 27," the Taurus 9mm handgun.
At trial, Defendant testified that he did not have a weapon with him at the Carroll Avenue residence and that he did not shoot and kill the victim. Defendant explained that roughly
30 minutes after [the victim] arrived, shots was fired through the cut from Jacobs Street, which is behind Carroll Street coming in our direction. [The victim] pulled out his gun and started shooting in the direction that the shots were being fired at us. And everybody just scattered, ran in different directions.
Defendant said that he ran off in the opposite direction and did not return to Carroll Avenue that evening.
The jury found Defendant not guilty of first-degree murder, but did find Defendant guilty of possession of a firearm by a felon. The trial court sentenced Defendant to 22-36 months' imprisonment for his conviction of possession of a firearm by a felon. Defendant gave oral notice of appeal in open court.
On appeal, Defendant argues (1) that two jurors were seated in violation of his constitutional rights, constituting reversible error; (2) that admission of the testimony of the State's ballistics expert amounted to plain error; and (3) that the trial court plainly erred when it admitted evidence of Defendant's 17-year-old conviction for armed robbery.
Discussion
I. Jury Members
Defendant first argues that his conviction of possession of a firearm by a felon must be vacated due to two jurors having been seated in violation of his constitutional rights.
During voir dire , one of the prospective jurors revealed that he had been robbed at gunpoint and that his home had been broken into twice. The juror admitted that those incidents would "maybe" keep him "from being fair and impartial both to the State and the Defendant," but added, "I haven't heard anything [about Defendant's case at this point]. So, I haven't made up my mind." When asked whether he would "be able to put those incidents out of [his] mind if [he] were seated as a juror in this case," he answered, "Like I say, I can only try." Defendant made no objection to this individual's service on the jury, and he was thereafter seated as a juror.
A second prospective juror revealed during voir dire that he listened to a police scanner in his home on a daily basis as "kind of like a hobby." When asked whether he had "heard something on the scanner about this matter," the juror responded that he did "remember hearing about [a] shooting with a fatality on the ... scanner in Rocky Mount months ago, but I do not know if this is the same case. I don't know." After being told that "this occurred December 24, 2015," the juror acknowledged, "[t]hat would be what I heard on that scanner." The juror, however, stated that he "[n]ever heard any names or anything like that." In addition, when asked whether there was "anything about that information that you may hear on the scanner that-that would cause you to not be fair and impartial with the evidence that you hear in this case," the juror responded, "No, sir." Defendant likewise did not object to this second individual's service on the jury, and he was ultimately seated as a juror.
Defendant argues that the first juror's seating on the jury despite his "inability to commit to being fair and impartial" constituted structural error, and that he is therefore entitled to a new trial. As for the second juror, Defendant maintains that the juror's admission regarding the police scanner "demonstrates his exposure to and knowledge about extraneous information not presented at trial." According to Defendant, "[b]ecause such information was not in evidence and subject to challenge, [his] constitutional right of confrontation was abridged." Defendant further argues that the service of the second juror was in violation of his right to a unanimous jury verdict, in light of the fact that the juror "had been exposed to information to which no other jurors had access and was not presented as evidence in court."
However, because Defendant did not object to the seating of either juror, his arguments pertaining to the constitutionality thereof have not been properly preserved for appellate review. See N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make ...."); State v. Wilson , 363 N.C. 478, 484, 681 S.E.2d 325, 330 (2009) ("[T]he failure to raise a constitutional issue at trial generally waives that issue for appeal[.]"). Nevertheless, Defendant has requested that this Court invoke our authority under Rule 2 in order to reach the merits of his arguments on appeal. This we decline to do.
Rule 2 of the North Carolina Rules of Appellate Procedure authorizes this Court to suspend the appellate rules in order to reach the merits of an otherwise unpreserved issue when doing so would be "necessary to prevent manifest injustice to a party." Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co. , 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (quotation marks omitted). Rule 2, however, is an "extraordinary step" that "must be invoked cautiously." Id. (quotation marks omitted). It "relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest, or to prevent injustice which appears manifest to the Court and only in such instances." Steingress v. Steingress , 350 N.C. 64, 66, 511 S.E.2d 298, 299-300 (1999).
We see no manifest injustice that would result in the instant case from declining to review the merits of Defendant's arguments concerning the impartiality of jurors who voted unanimously to acquit him of a charge of first-degree murder. Nor is this Court able to ascertain error where Defendant has not identified any extraneous information to which the second juror would have become privy by listening to a police scanner. We therefore decline to invoke Rule 2, and dismiss Defendant's appeal as to these issues.
II. Expert Ballistics Testimony
Defendant next argues that the trial court committed plain error when it allowed Mr. Bishop, the State's ballistics expert, to testify that the projectiles recovered from the victim's autopsy and from Carroll Avenue were fired by the Taurus 9mm handgun because Mr. Bishop "failed to explain whether or how he reliably applied accepted forensic ballistics principles and methods to reach his conclusions," in violation of Rule 702(a)(3) of the North Carolina Rules of Evidence. We disagree.
Pursuant to Rule 702 of our Rules of Evidence,
[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
(1) The testimony is based upon sufficient facts or data.
(2) The testimony is the product of reliable principles and methods.
(3) The witness has applied the principles and methods reliably to the facts of the case.
N.C. Gen. Stat. § 8C-1, Rule 702(a) (2017).
"Subsections (1)-(3) compose the three-pronged reliability test" applicable to expert opinion testimony. State v. McPhaul , --- N.C. App. ----, ----, 808 S.E.2d 294, 303 (2017), disc. review improvidently allowed , 371 N.C. 467, 818 S.E.2d 102 (2018). Under that inquiry,
[t]he primary focus ... is on the reliability of the witness's principles and methodology, not on the conclusions that they generate. However, conclusions and methodology are not entirely distinct from one another, and when a trial court concludes that there is simply too great an analytical gap between the data and the opinion proffered, the court is not required to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.
State v. McGrady , 368 N.C. 880, 890, 787 S.E.2d 1, 9 (2016) (citations, brackets, and quotation marks omitted). "The precise nature of the reliability inquiry will vary from case to case depending on the nature of the proposed testimony." Id. The trial court therefore has discretion when considering the three prongs of the "reliability test" under Rule 702, i.e., "whether the expert's testimony is based on sufficient facts or data, whether the testimony is the product of reliable principles and methods, and whether the expert has reliably applied those principles and methods in that case." Id. at 892, 787 S.E.2d at 10.
Initially, Defendant argues that Mr. Bishop's "repeatedly asserted conclusion that he determined the ballistics evidence provided to him were fired by State's Exhibit 27 [the Taurus 9mm handgun] was impermissibly absolute in its unqualified nature," and that "[s]uch testimony contravened" Rule 702 and "exceeded the permissible scope of forensic ballistics testimony." Defendant, however, cites no controlling authority to support this contention, noting only that "federal courts-including one in the Fourth Circuit-have rei[ ]ned in the nature and scope of permissible ballistics opinion testimony."
Defendant further contends that Mr. Bishop's testimony constituted plain error "absent any evidence regarding the details of how [he] reliably applied forensic ballistics methodology in this case to reach his conclusions[,]" in violation of Rule 702(a)(3). We disagree.
After the State tendered Mr. Bishop as an expert in ballistics and ballistics comparisons, Mr. Bishop testified that he compared the projectiles recovered from Carroll Avenue and from the victim's body and determined that they were fired from the same Taurus 9mm handgun that was found at the Rick Boone Road crime scene. The following exchange then took place:
Q. ... Can you tell the jury the steps you walked through to come to those conclusions?
A. Reference the pistol itself?
Q. Yes.
A. Okay. After I requested the pistol from Rocky Mount P.D., I test fired the weapon. Prior to that, I had already examined the bullets and cartridge cases that were submitted, and I was able to determine they were fired by the same gun. Then taking the test firings from State's Exhibit 27, then placed them on a comparison microscope, which I can look at two objects simultaneously, you can see-see whether or not the markings placed on the bullets from the barrel of the gun were the same as the test fires to the evidence. I was able to determine that the three bullets were fired from that gun based on the markings and scratches that are on the bullets once it's fired through the barrel of the gun.
Whereas the cartridge cases, you have what we call a firing pin impression and bridge-face markings. That's the first two things we look at which are on the base of the cartridge. The firing pin strikes the primer, ignites the powder, it pushes the bullet down the barrel. While the bullet's going down the barrel, the slide of the firearm is coming back and it's ejecting out the fired round. The slide goes forward, the next round is ready to be fired.
So, by test firing the gun, I was able to compare the firing pin impression and bridge-face markings to the tests and make the determination that the eight fired cartridge casings that were submitted were fired by State's Exhibit 27.
Q. And when you say you looked at the firing pin head and the impressions and then the bullets, are those usually unique to each gun you examine?
A. Yes, ma'am.
Given the nature of the expert testimony, we conclude that this detail sufficiently demonstrated how Mr. Bishop "applied the principles and methods reliably to the facts of the case, as required by Rule 702(a)(3)." McPhaul , --- N.C. App. at ----, 808 S.E.2d at 305 (quotation marks omitted). Accordingly, Defendant has failed to show that the trial court erred, much less plainly erred, in admitting this testimony.
III. Armed Robbery Conviction
Lastly, Defendant argues that the trial court committed plain error when it admitted evidence of his 17-year-old armed robbery conviction, in violation of Rule 609 of the Rules of Evidence. We find no plain error.
Rule 609 of the North Carolina Rules of Evidence provides that, "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted[.]" N.C. Gen. Stat. § 8C-1, Rule 609(a). However, Rule 609 also places a time limit on the admissibility of a witness's prior convictions under the rule:
Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.
Id. § 8C-1, Rule 609(b).
In the instant case, Defendant took the stand and was asked the following on direct examination:
Q. Okay. And you heard Ms. Jessica Bass testify as to a conviction that you have on your criminal record.
A. Yes, sir.
Q. Okay. And that was for possession of cocaine.
A. Yes, it was.
Q. Okay. Is there anything else within the past ten years that you've been convicted of that would carry a sentence of more than 60 days in jail?
A. I think I was-a DUI or something.
The State then inquired on cross-examination:
Q. You said before that you've been convicted of just a DWI.
A. No, I think I've been convicted-not right off hand, I know I've been convicted of DWI and possession of cocaine and probably flee- ... fleeing and eluding ....
Q. You've been convicted of robbery with a dangerous weapon too, haven't you?
A. When was that?
Q. 2000?
A. 2000?
Q. Huh-uh, armed robbery.
A. Yes, sir.
Q. You got possession of cocaine conviction the jury heard about. You've got-
A. That robbery charge was over ten years ago, wasn't it?
Q. Uh-huh, you got-you've been convicted of assault on a government official.
A. Maybe.
Q. And lastly, you were in this courtroom not too long ago this year, weren't you?
A. Yes, I was.
Q. And you were convicted of possession of a firearm by a convicted felon then, weren't ... you?
A. Possession of a firearm that-that I never possessed and got caught with and it's under appeal right now.
Q. And that incident happened on Carroll Avenue too, didn't it?
A. Yes, sir ....
Defendant failed to object to this line of questioning. Nevertheless, Defendant argues that it was plain error for the armed robbery conviction to have been admitted into evidence because the conviction was more than ten years old and the trial court did not conduct the analysis required under Rule 609(b). Defendant further contends that "the State's purpose for impeaching [him] with the stale conviction" was not permitted under Rule 609.
In order for a defendant to establish that he is entitled to a new trial under the plain error standard of review, he must show
that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, quotation marks, and brackets omitted).
In the instant case, even assuming, arguendo , that evidence of the armed robbery conviction was admitted in error, Defendant cannot show that he was prejudiced thereby, and therefore has failed to establish plain error.
As the State notes, the introduction of the armed robbery conviction "was sandwiched among a number of other previous convictions that actually occurred within ten years of Defendant's date of trial[,]" thereby diminishing the prejudicial impact of that conviction standing alone. Moreover, abundant evidence was presented tying Defendant to the possession of the Taurus 9mm handgun that was recovered from the Rick Boone Road crime scene. Mr. Parker unequivocally testified that he saw Defendant pull out a firearm and shoot the victim, and Defendant's DNA was the only DNA profile that was found on the handgun. In light of the evidence presented against Defendant at trial, we conclude that, even if admitted in error, Defendant has failed to show that the introduction of his 17-year-old conviction had a probable impact on the jury's verdict in this matter. See, e.g. , id. at 519, 723 S.E.2d at 335 ("In light of the overwhelming and uncontroverted evidence, defendant cannot show that, absent the error, the jury probably would have returned a different verdict.").
Conclusion
We decline to invoke Rule 2 in order to review the merits of Defendant's arguments concerning the constitutionality of the seating of two jurors in the instant case. Admission of the expert testimony concerning the ballistics comparisons and the testimony concerning Defendant's armed robbery conviction did not amount to plain error.
DISMISSED IN PART; NO ERROR IN PART.
Report per Rule 30(e).
Judges TYSON and COLLINS concur.

The term "butt" is a reference to the act of hitting someone with the bottom of a firearm.